Bobby James MOORE, Appellant,

v.

The STATE of Texas, Appellee.

No. 68871.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 9, 1985.

John H. Ward, Al Bonner (Court appointed), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and James C. Brough and Ned Morris, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

Bobby James Moore, appellant, appeals his conviction by a jury for committing the offense of capital murder. It was alleged in the indictment that is on file in this cause that the appellant "heretofore on or about APRIL 25, 1980, did then and there unlawfully while in the course of committing and attempting to commit the Robbery of James McCarble, hereafter styled the Complainant, intentionally cause[d] the death of the Complainant by shooting the Complainant with a [shot] gun." Because the jury answered in the affirmative the special issues that were submitted to it pursuant to Art. 37.071, V.A.C.C.P., the trial judge assessed appellant's punishment at death.

We will affirm the trial court's judgment.

We are favored with several briefs in this cause. This occurred because initially Al Bonner, an attorney in Houston, who with the late C.C. Devine, another attorney in Houston, represented appellant at his trial, and until replaced by John H. Ward, who is court appointed counsel on appeal, represented appellant on appeal as a volunteer attorney. Bonner filed a brief on appellant's behalf. After Ward was appointed to represent appellant on appeal he, too, filed a brief. Because this is a death penalty case, we will review all of the grounds of error that both Bonner and Ward present in their respective briefs, as well as those that appellant has submitted in the pro se brief that he has filed.

In the fifth and last ground of error urged by Ward, he asserts that "there is no evidence to suggest that the deceased's murder occurred in the course of committing or attempting to commit a robbery." Ward also asserts that "[t]here is no evidence which supports a finding that the appellant killed the deceased in immediate flight after the commission of, or in an attempt to commit robbery."

Because of these allegations, we will set out many of the pertinent facts that were presented to the jury in this cause.

The facts of this case reflect that James "Jim" Mc Carble, who was 72 years of age and had been a long time employee of the Birdsall Super Market, which was located at 231 Birdsall Street in Houston, was shotgunned to death by appellant on Friday afternoon, April 25, 1980. Prior to his death, Mc Carble, along with another employee of the store, Edna Scott, had been inside of a courtesy booth of the store.

Scott testified that unknown to her and Mc Carble an unknown and uninvited stranger, who was later identified as Willie "Ricky" Koonce, came into their courtesy booth. Soon thereafter, Koonce pushed a white cloth bank bag towards Mc Carble and said: "Fill it up, man. You are being robbed." Mc Carble then jumped to the left of Scott, which allowed Scott to see appellant, who she believed was wearing a

wig, facing her with a shotgun. At that time, appellant was standing outside of the courtesy booth in front of its window or cage. When Koonce told Mc Carble "Fill it up, man. You are being robbed," Scott shouted: "J.B. [referring to an assistant manager who did not testify], we are being robbed." Scott dropped to the floor, after which she heard a loud noise. Mc Carble then fell on the floor right beside Scott. Scott looked at Mc Carble and observed that "Jim's head [had been shot] off."

After the appellant fired his shotgun, he and Koonce then ran from the store. When running on the outside of the store towards what was identified as Koonce's vehicle the wig that appellant was wearing fell off his head. He also dropped a bag that he was carrying.

Scott was unable to give the police a good description of the hijackers. However, she later identified Koonce at a lineup the police conducted and also made an in court identification of Koonce as being the hijacker who had come inside of the courtesy booth.

Debra Salazar, an employee of the store, positively identified appellant in court as the hijacker who shot Mc Carble in the head with a shotgun, which shooting caused the death of Mc Carble. However, see *post* concerning Salazar's "positive" identification testimony.

Arthur Wallace Moreno, another employee of the store, who witnessed appellant and Koonce run from the store, recovered the wig and bag that appellant had dropped when he was running towards Koonce's car. Moreno turned these items over to Leonard Goldfield, the owner of the store, who turned them over to the police. The bag contained a receipt that was traced to appellant's "play mother's" residence, which was where appellant had either lived or stayed at in the past. Moreno was also unable to positively identify either appellant or Koonce. Moreno, however, positively identified Everett Anthony Pradia, who the evidence showed left the store after Scott shouted "J.B., we are being robbed."

As previously pointed out, Salazar made a positive in court identification of appellant as being the triggerman. Salazar testified: "That would be him for sure. I do know for sure that it was him right now." Salazar also positively identified a shotgun that was shown her as being one and the same shotgun with which appellant had shot Mc Carble. Salazar also testified that she attended several lineups and positively identified appellant, Koonce, and Pradia as being the robbers. However, on cross-examination, Salazar changed her testimony from being positive on everything to "I feel that it is him but I'm not positive," and "The best [I] can say is [I] saw a [shot]gun that looked like that one."

We pause to point out that this Court has held in the past that the fact that a witness cannot be positive in his identification of another person goes to the weight of his testimony and not to its admissibility; therefore, the lack of a positive identification is a jury issue. *Valenciano v. State*, 511 S.W.2d 297 (Tex.Cr.App.1974).

Wulfrido Cazares, a customer of the store who was on the outside of the store when the robbery occurred, testified that he gave Goldfield, the owner of the store, a license plate number of a motor vehicle. Goldfield turned this information over to the police, who established that it belonged to a vehicle that was owned by Koonce. Cazares became attracted to Koonce's vehicle because he saw three persons, one of whom was armed, fleeing from the store at a fast pace, and thereafter saw them get into Koonce's vehicle and drive off.

Dr. Robert Bucklin, who was then Chief Deputy Medical Examiner for Harris County, testified that Mc Carble "was killed as a result of a shotgun wound to the head."

Pradia testified for the prosecution and he testified that he, appellant, and Koonce planned and committed the robbery. Pradia testified that they went to the store in Koonce's vehicle. Pradia also testified that when they went inside of the store appellant was armed with a shotgun and he was armed with a .32 calibre pistol. Pradia further testified that each person had an

assigned task: Because Koonce was the tallest, he was to reach over the courtesy booth and unlatch the door to the courtesy booth and then go inside of the booth and get the money. Appellant was to be "the lookout man" at the courtesy booth. Pradia was to "clean out the cash registers."

Everything went well for the hijackers until Scott screamed that a robbery was occurring. Things then went downhill for the hijackers and Mc Carble.

After Scott screamed that a robbery was occurring, Pradia immediately left the store, with Koonce and appellant not too far behind him. They all got in Koonce' vehicle and left the scene. After they got inside of the car, appellant told them that he had shot someone inside of the store. Pradia testified that at that time he did not believe appellant but later, after he had heard on the news that Mc Carble had been shot and died as a result of the shooting, he then believed appellant had told him the truth. The three hijackers later split up.

Pradia turned himself into the police several days later, and subsequently "got his business straight." He confessed to the police and told them how he, appellant, and Koonce had planned and committed the robbery. Thereafter, Pradia entered a plea of guilty to the lesser included offense of murder that pertained to this cause and also entered pleas of guilty to four other robberies that he had committed. The pleas were taken by another trial judge. At the time of appellant's trial, Pradia had not been sentenced.

Appellant was arrested several days later at his grandmother's residence in Coushatta, Louisiana by Louisiana law enforcement officers who were acting pursuant to a fugitive warrant that had issued in Houston as a result of a complaint being filed against appellant that accused him of the robbery and murder of Mc Carble.

After Houston police homicide Detectives L.S. Ott and D.W. Autrey went to Coushatta and returned to Houston with appellant, Ott took a confession from appellant, which

was witnessed by two other homicide detectives, who did not testify. A *"Jackson v. Denno* hearing" on the admissibility of the appellant's written confession was conducted by the trial judge. In *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the Supreme Court held that the trial judge must first make the actual determination whether a written confession is admissible evidence. Also see Art. 38.22, V.A.C.C.P., and *Lopez v. State,* 384 S.W.2d 345 (Tex.Cr.App.1964). After conducting the hearing, the trial judge ruled that the confession was admissible evidence. Ott testified that the confession was in all things taken in accordance with the law.

Appellant testified at both the *"Jackson v. Denno,* supra, hearing" and during his trial. He denied committing the offense. He testified that he could not have committed the offense because he was in Louisiana at his grandmother's residence when the offense was committed. His alibi defense was corroborated by one of his sister's testimony. Appellant also denied that the written confession was his confession. Appellant testified that he signed his signature on two blank white sheets of paper,[1] after Ott told him that if he did so he would be released "within 74 minutes." Appellant also testified that the signatures on the blue confession sheets of paper were not his and that they were forgeries.

Over objection, and on rebuttal, the State called Sarah Hitchcock, Stella Gattie, and Seth Parker to testify to two extraneous offenses.

Hitchcock testified that she managed Barnes' Grocery store, located on West Airport Boulevard in Houston. She testified that in the early afternoon of April 11, 1980, a Friday, appellant, armed with a shotgun, with two other persons who were armed with pistols, came into the store and robbed her of money while she was manning a courtesy booth in the store. The way the robbery of Hitchcock took place was in all things similar to the way the robbery of Mc Carble occurred, except no

---

1. The confession is on blue paper.

one was killed. Appellant appeared to her to be standing guard outside of the courtesy booth.

Gattie testified that she worked as a checker at a Minimax store located at Berry and Irvington in Houston, and that in the early afternoon of Friday, April 18, 1980, while manning the courtesy booth of the store, she was robbed at shotgun point by two persons. This robbery was conducted much like the Hitchcock robbery had been conducted. Appellant, who was armed with the shotgun, appeared to Gattie to be "standing like on guard" outside the courtesy booth.

Seth Parker testified that he was present as a customer in the Minimax store and witnessed the robbery of Gattie take place.

■ We overrule appellant's fifth ground of error, that is contained in the brief Ward filed, which asserts that the evidence is insufficient to support the verdict of the jury that appellant committed the offense of capital murder.

We will next address appellant's third ground of error, that is contained in the brief that Bonner filed, which asserts that the trial judge erred in admitting into evidence over objection the two extraneous offenses.

In deciding whether the extraneous offenses are admissible evidence, we must first decide whether this case is one based upon direct evidence or is one based upon circumstantial evidence because when it comes to deciding whether extraneous offenses are admissible evidence this Court is more likely to hold that they are admissible evidence if it finds that the State's case is one based upon circumstantial evidence than if it is one based upon direct evidence. Cf. *Morgan v. State*, 692 S.W.2d 877 Fn. 3 (Tex.Cr.App.1985).

## I. THE RULE

■ Direct testimony from *any* source that the appellant was one of the robbers and was also the person who caused the death of Mc Carble will cause this case to be one based upon direct evidence and not circumstantial evidence. See *Barefoot v.*

*State*, 596 · S.W.2d 875 (Tex.Cr.App.1980); *Williams v. State*, 566 S.W.2d 919 (Tex.Cr.App.1978); *Ridyolph v. State*, 545 S.W.2d 784 (Tex.Cr.App.1977); *Knight v. State*, 538 S.W.2d 101 (Tex.Cr.App.1975); *Sloan v. State*, 515 S.W.2d 913 (Tex.Cr.App.1974).

## A. THE TESTIMONY OF THE STATE'S WITNESSES PRADIA AND SALAZAR AND APPELLANT'S CONFESSION MAKE THIS CASE ONE BASED UPON DIRECT EVIDENCE AND NOT CIRCUMSTANTIAL EVIDENCE

■ The testimony of Pradia, even though he was an accomplice witness as a matter of law, was sufficient to make the State's case one based upon direct evidence and not circumstantial evidence. See *Bradley v. State*, 450 S.W.2d 847 (Tex.Cr.App.1970), and the cases cited on page 852.

■ Notwithstanding the fact that she may have changed her testimony substantially on cross-examination, Salazar's testimony still constitutes direct evidence. The fact that a witness cannot be positive in his identification of another person goes to the weight of his testimony, not to its admissibility; therefore, the lack of a positive identification is a jury issue. *Valenciano v. State*, supra.

■ Lastly, appellant's confession, in which he admitted committing the crime, constitutes direct evidence.

Because the case at Bar is one based upon direct evidence, and not circumstantial evidence, we need not concern ourselves with cases of this Court which have dealt with the admission into evidence of extraneous offenses and the case was one based upon circumstantial evidence. In that instance, when the State's case is one based upon circumstantial evidence, a different process applies in determining the admissibility of extraneous offenses. *Mulchahey v. State*, 574 S.W.2d 112 (Tex.Cr.App.1978); *Etchieson v. State*, 574 S.W.2d 753 (Tex.Cr.App.1978); *Jones v. State*, 568 S.W.2d 847 (Tex.Cr.App.1978). Cf. *Han-*

kins v. State, 646 S.W.2d 191 (Tex.Cr.App. 1983); *Morgan v. State*, supra, fn. 2.

## II. THE GENERAL RULE REGARDING EXTRANEOUS OFFENSES

"The general rule in all English speaking jurisdictions is that an accused person is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is now deemed axiomatic and is followed in all jurisdictions." *Young v. State*, 159 Tex.Cr.R. 164, 261 S.W.2d 836, 837 (Tex.Cr.App.1953). Also see *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Cr.App.1983); *Collazo v. State*, 623 S.W.2d 647 (Tex.Cr.App.1981); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972).

The reason for this general rule of inadmissibility is quite simple: "In a criminal proceeding, when the State seeks admission of an extraneous or similar transaction committed by the accused, which constitutes a separate criminal offense, introduction of that 'extraneous offense' transaction is inherently prejudicial, since the accused has no notice he will be called to defend against it, and his 'propensity to commit crimes' is not material to whether he is guilty of the specified conduct which is charged by the State ..." *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Cr.App. 1983), quoting *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Cr.App.1983). Also see *Garcia v. State*, 581 S.W.2d 168, 179 (Tex.Cr. App.1979) (Roberts, J., concurring opinion).

## A. THE IDENTIFICATION EXCEPTION TO THE GENERAL RULE THAT EXTRANEOUS OFFENSES ARE INADMISSIBLE EVIDENCE

As is true with most general rules of law, there are exceptions to the general rule that extraneous offenses or transactions are inadmissible evidence in a criminal trial.

■ One exception to the above general rule of inadmissibility is that extraneous offenses *may* become admissible evidence if the accused during his trial raises the issue of his identification. Of course, the identity of the accused as the wrongdoer is one of the material issues which is raised by the State's pleading an offense in any charging instrument, and any time that the accused enters a plea of not guilty he makes such a contested issue. However, such does not, *ipso facto*, cause any extraneous offenses to become admissible evidence either during the State's case in chief or on rebuttal.

## B. DID APPELLANT DURING HIS TRIAL RAISE THE ISSUE OF HIS IDENTIFICATION?

Because appellant presented the defense of alibi, he injected into this cause the issue of his identification. *Dickey v. State*, 646 S.W.2d 232 (Tex.Cr.App.1983); *Wintters v. State*, 616 S.W.2d 197 (Tex.Cr.App.1981); *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App. 1980); *Jones v. State*, 587 S.W.2d 115 (Tex. Cr.App.1979).

## C. BUT, SUCH DID NOT, IPSO FACTO, CAUSE THE EXTRANEOUS OFFENSES TO BECOME ADMISSIBLE EVIDENCE

■ Notwithstanding the fact that the appellant raised the issue of his identification through his defense of alibi, such did not, *ipso facto*, cause the extraneous offenses to become admissible evidence.

This Court recently held: "To the extent that it suggests that the defense of alibi invariably and necessarily creates a material issue as to 'identity' so as to dispense with further analysis as to the admissibility of extraneous offense evidence, *Cameron v. State*, 530 S.W.2d 841 (Tex.Cr.App.1975), (which holds to the contrary), is overruled." *Boutwell v. State*, —— S.W.2d —— (Tex.Cr. App.Nos. 711–83, 712–83, and 713–83, April 24, 1985) (Pending on State's Motion for Rehearing).

We pause to point out that it also might be argued that because of attorney Devine's cross-examination of Salazar that this also caused the issue of identification to be raised by appellant. This Court has held: "Cross-examination of State's witnesses can raise the issue of identity ... But where cross-examination fails to [materially] impeach the witness, .. cross-exami-

nation of a State's witness will not in itself support the introduction of extraneous transactions on the issue of identity." *Walker v. State,* 588 S.W.2d 920, at 922 (Tex.Cr.App.1980); *Prior v. State,* 647 S.W.2d 956, 959 (Tex.Cr.App.1983). However, "To hold that the cross-examination of [a State's witness] would permit the introduction of an extraneous offense would be tantamount to holding that such testimony would be admissible in any case where a defendant's counsel exercises the constitutional right of cross-examination. This is not and should not be the law." *Caldwell v. State,* 477 S.W.2d 877, 879 (Tex.Cr.App.1972). Cf. *Redd v. State,* 522 S.W.2d 890 (Tex.Cr.App.1975); *Rogers v. State,* 484 S.W.2d 708 (Tex.Cr.App.1972); *Sigueiros v. State,* 685 S.W.2d 68 (Tex.Cr. App.1985); *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.1980). Nevertheless, the cross-examination must not go beyond the bounds of testing the witness' testimony regarding his identification of the accused as the wrongdoer. *Caldwell v. State,* supra. In this cause, through effective cross-examination, Salazar's testimony changed from being extremely positive to less than positive that appellant was one of the robbers and was the triggerman. Did this cause her testimony to become completely undermined? The fact that a witness cannot be positive in his identification of another person goes to the weight of his testimony and not to its admissibility; the lack of a positive identification is a jury issue. *Valenciano v. State,* supra. Thus, Salazar's testimony was not completely undermined, but, instead, was merely weakened by cross-examination. Thus, her testimony, standing alone, would have been sufficient to support the jury's verdict that appellant committed the robbery-murder of Mc Carble. Nevertheless, when Salazar's weakened testimony is considered with the appellant's defense of alibi, and the conditional jury instructions governing appellant's confession and the accomplice witness Pradia's testimony, we are unable to state that the State's need for the extrane-

ous offenses was not great. *Morgan v. State,* 692 S.W.2d 877 (Tex.Cr.App.1985). Cf. *Siqueiros v. State,* 685 S.W.2d 68 (Tex. Cr.App.1985).

## D. ALBRECHT V. STATE

The State's reliance upon *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972), as standing for the proposition that if the accused presents the defense of alibi, that this, *ipso facto,* causes any extraneous offenses to become admissible evidence to refute such defensive theory, is misplaced for the reasons stated in several of this Court's more recent decisions, which have "expressly eschewed the mechanistic invocation and application of 'general rules' and their 'exceptions' in determining the admissibility of extraneous acts of misconduct by the accused." *Morgan v. State,* 692 S.W.2d 877 (Tex.Cr.App.1985).

In *Williams v. State,* 662 S.W.2d 344 (Tex.Cr.App.1984), this Court recently clarified what was stated and held in *Albrecht v. State,* supra. In doing so, it "observed that the list of 'exceptions' to the 'general rule' of nonadmissibility of extraneous transactions contained [in *Albrecht,* supra,] was exemplary rather than exhaustive, and [such] was meant [only] to be reflective of the proposition that extraneous transactions *may* become admissible, upon a showing by the prosecution both that the act is relevant to a material issue in the case and that its relevancy value outweighs its inflammatory or prejudicial potential." *Morgan v. State,* 692 S.W.2d 877 (Tex.Cr.App. 1985).

The *present true test* that governs the admissibility of extraneous offenses was recently explicated in *Williams v. State,* supra, as follows: "[E]xtraneous transactions constituting offenses shown to have been committed by the accused [note omitted] may become admissible upon a showing by the prosecution both that the transaction is relevant to a material issue in the case, and the relevancy value of the evidence outweighs its inflammatory or preju-

dicial potential." (346). Also see *Plante v. State*, 692 S.W.2d 487 (Tex.Cr.App.1984).[2]

### E. BUT, THERE IS A THIRD PART TO THE TEST

■ When identity is in issue in a criminal case, such as when the accused presents the defense of alibi, before extraneous offenses are admissible evidence the State must show that they are relevant to the primary offense and that their probative value outweighs their inflammatory or prejudicial effects. This Court has also required, before extraneous offenses are admissible, a high degree of similarity between the primary offense and the extraneous offenses. *Dickey v. State*, supra.

Once the issue of identity has been raised by the accused, such as by presenting the defense of alibi, evidence of an extraneous offense becomes admissible evidence to prove identity only if there is some distinguishing characteristic or characteristics common to both the primary offense and the extraneous offense. *Wintters v. State*, supra; *Dickey v. State*, supra. This means that "[w]hen identity has become a contested, material issue, as it did in this case, there must be a showing that the extraneous offense which was committed by the defendant was 'so nearly identical in method [to the instant offense] as to earmark them as the handiwork of the accused ... If there is no sufficiently distinctive characteristic, then the relevancy of the evidence cannot outweigh its prejudicial potential." *Collazo v. State*, supra.

■ In this instance, we find and hold that the extraneous offenses were relevant to a material issue in the case, namely, the identification of appellant as being one of the hijackers and being the shotgunman. We also find and hold that there were sufficient common characteristics between the offenses. However, did the extraneous offense testimony, that was admitted solely on the issue of identification, possess such probative value as to outweigh its inflammatory or prejudicial effect?

The trial judge gave the jury a limiting instruction that the extraneous offense testimony could only be considered on the issue of identification. Although the jury had before it testimony and instructions regarding the accomplice as a matter of law witness Pradia's testimony, and the written confession of appellant, such testimony and evidence were submitted to the jury conditionally. In the eyes of a rational trier of fact, appellant's trial counsel's cross-examination of the eyewitness Salazar might have destroyed the only eyewitness testimony the State had. The appellant presented the defense of alibi.

### F. OUR HOLDING

In light of all of the above, we believe that the probative value of the relevant extraneous offense testimony is quite high, and that the prejudicial effect that such might have had on the jury would have been minimal.

Appellant's ground of error is overruled.

### III. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE APPELLANT'S CONFESSION?

In the first ground of error that is presented in the brief that Bonner filed, appellant asserts that the trial court erred in admitting into evidence his written confession.

The record reflects that a "*Jackson v. Denno*, supra, hearing"[3] was conducted in order for the trial judge to determine the admissibility of the appellant's written confession. After the hearing, the trial judge ruled that the appellant's written confession was admissible evidence. The trial judge later entered findings of fact and a conclusion of law that the confession was taken in accordance with the law. The

---

2. Evidence becomes relevant when it tends to make the proposition at issue either more or less probable. *Waldrop v. State*, 138 Tex.Cr.R. 166, 133 S.W.2d 969, 970 (Tex.Cr.App.1940).

3. So named after *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), in which the Supreme Court held that a confession or admission cannot be used as evidence at a criminal trial until a judge has made a determination at a separate hearing that the confession or admission was voluntarily made.

record supports such findings of fact and conclusion of law. However, appellant is correct in his assertion that the trial judge did not make an express finding that the signatures on the appellant's written confession were his signatures. We believe, however, that implicit within the trial judge's findings and conclusion of law is the finding that the signatures on the written confession are appellant's.

The record reflects that over the objection that the appellant should have been permitted to testify first, the prosecution's witness Ott, who took the appellant's written confession, testified that the written confession was taken in accordance with the law.

Appellant also testified at the hearing. He denied signing the confession, which was on blue colored paper; denied that the signatures on the confession were his; and testified that the signatures were in fact forgeries. He also testified that Ott induced him to sign his name on blank white colored sheets of paper on the pretext that if he signed the pages in blank he would be released "within 74 minutes."

Appellant argues, inter alia, that the procedure that was used at the hearing deprived him of due process and due course of law. He asserts that when the State makes it known to the trial judge that it intends to offer into evidence a written confession of the accused, and the accused makes it known to the trial judge that he is going to deny that he signed the written confession, this allows the accused to testify first at the *Jackson v. Denno,* supra, hearing. Appellant argues that after the accused testifies, denying that he signed the written confession, then all that the State is then permitted to do is to put on "rebuttal" testimony, and, in this instance, because Ott's testimony did not "rebut" appellant's testimony, this caused the written confession to become inadmissible evidence as a matter of law.

*We confess: We are unfamiliar with any such principle of law, and in fact have never heard of such a principle of law ever* being in existence in this or any other jurisdiction.

We are, however, aware of and familiar with the principle of law that states that whenever the accused's testimony reflects that he was unlawfully caused to make a written confession, and his testimony is uncontradicted, then the accused's written confession is inadmissible evidence as a matter of law. If, however, the facts are controverted as to whether the written confession was taken in accordance with the law, then the issue is one of fact to be first determined by the trial judge out of the presence of the jury. Upon the finding by the judge as a matter of law and fact that the written confession was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such written confession for any purpose nor any evidence obtained as a result thereof. Art. 38.22, Sec. 6, V.A.C. C.P. Also see Art. 38.23, V.A.C.C.P. The State is correct when it states that the test at the *"Jackson v. Denno,* supra, hearing,*"* is not whether the evidence is rebutted, but, instead, whether it is controverted. *Bonham v. State,* 680 S.W.2d 815 (Tex.Cr. App.1984); *Dykes v. State,* 657 S.W.2d 796 (Tex.Cr.App.1983); *Darden v. State,* 629 S.W.2d 46 (Tex.Cr.App.1982); *Barton v. State,* 605 S.W.2d 605 (Tex.Cr.App.1980); *Harville v. State,* 591 S.W.2d 864 (Tex.Cr. App.App.1979); *McMahon v. State,* 582 S.W.2d 786 (Tex.Cr.App.1979); *Myre v. State,* 545 S.W.2d 820 (Tex.Cr.App.1977); *Scott v. State,* 434 S.W.2d 678 (Tex.Cr.App. 1968).

In this instance, the testimony that was presented to the trial judge at the *"Jackson v. Denno,* supra, hearing"* was controverted. The trial judge had the duty and responsibility to resolve the disputed facts, and did so, favorably to the prosecution, and his findings of fact and conclusion of law are supported by the record.

For the reasons we have stated, this cause does not come within the likes of

*Smith v. State*, 547 S.W.2d 6 (Tex.Cr.App. 1977); *Sherman v. State*, 532 S.W.2d 634 (Tex.Cr.App.1976); *Farr v. State*, 519 S.W.2d 876 (Tex.Cr.App.1975), where this Court reversed those convictions because the State failed to controvert the accused's testimony that his written confession was unlawfully obtained. In this instance, however, the State did controvert, through Ott's testimony, the testimony of appellant, thus causing the issue to be one to be resolved by the trial judge, which the trial judge did.

■ Appellant also asserts under this ground of error that the provisions of Art. 38.27, V.A.C.C.P., which provides: "It is competent to give evidence of handwriting by comparison, made by experts or by the jury. Proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath," are applicable to this cause. We disagree. That statute becomes applicable in a criminal case only when proof of a signature is done by comparison only. When the State does not rely upon comparison testimony to prove the signature on the written confession of the accused, but, instead, relies upon the testimony of a witness who observed the signing, then this statute is inapplicable. *Gilbreath v. State*, 412 S.W.2d 60 (Tex.Cr.App.1967). In this instance, Ott's direct testimony made the statute inapplicable.

Appellant's ground of error is overruled.

## IV. DID THE STATE CORROBORATE THE TESTIMONY OF THE ACCOMPLICE WITNESS PRADIA?

Art. 38.14, V.A.C.C.P., mandates that if the State's case rests upon the testimony of an accomplice witness, it is incumbent upon the prosecution to corroborate that testimony.

In the brief that Bonner filed, he asserts in his second ground of error that the testimony of Pradia, who was an accomplice as a matter of law witness for the prosecution [4] was not corroborated as required by Art. 38.14, supra. We disagree.

4. The jury was so instructed.

The corpus delicti of the crime of capital murder was established beyond any doubt, in that the State established beyond all doubt that the body of Mc Carble was found and identified and also established beyond all doubt that Mc Carble's death was caused by the criminal act of another. *Self v. State*, 513 S.W.2d 832 (Tex.Cr.App. 1974).

■ The test that this Court uses in determining whether there is sufficient corroborating evidence to corroborate an accomplice witness' testimony is to eliminate from consideration the evidence of the accomplice witness and then examine the evidence of other witnesses with a view of ascertaining whether there is any inculpatory evidence, that is, evidence tending to connect the accused with the commission of the offense. *Granger v. State*, 605 S.W.2d 602 (Tex.Cr.App.1980).

It is not necessary, however, that the accomplice witness' testimony be corroborated on all of his testimony, nor must the accomplice witness' testimony directly link the accused to the offense, nor must it even be sufficient in itself to establish the accused's guilt; it must only tend to connect the accused to the offense, *Paulus v. State*, 633 S.W.2d 827 (Tex.Cr.App.1981); *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr. App.1979), and all the facts and circumstances in evidence may be looked to as furnishing the necessary corroboration. If there is such evidence, the corroboration is sufficient; otherwise it is not, *Paulus v. State*, supra, and such corroboration may be based upon either circumstantial or direct evidence.

We find and hold, after having first excluded the accomplice witness Pradia's testimony, and after having excluded the testimony that went to the extraneous offenses, that Pradia's testimony was corroborated by other testimony that tended to connect appellant with the offense committed.

■ To make our finding, we needed only to look to the testimony of Salazar.

The fact that she might have gone from being extremely positive to less than positive that appellant was the robber-murderer of Mc Carble went to the weight of her testimony and not to its admissibility; therefore, the lack of a positive identification was a jury issue. *Valenciano v. State,* supra. To corroborate the testimony of an accomplice witness, such testimony need not be positive. See *Cooper v. State,* 631 S.W.2d 508 (Tex.Cr.App.1982), and the cases cited therein.

Appellant's ground of error is overruled.

## V. DID THE TRIAL COURT ERR IN REFUSING TO GIVE AN INSTRUCTION TO THE JURY PURSUANT TO THE PROVISIONS OF ART. 38.27, V.A.C.C.P.?

In the brief that Bonner filed on appellant's behalf, he asserts in his fourth ground of error that the trial court erred in refusing to give an instruction pursuant to the provisions of Art. 38.27, supra. As we have previously pointed out, this is not a case that calls for the invocation and application of the provisions of Art. 38.27, supra. Ott testified that the signatures on the written confession were appellant's. This was sufficient evidence to make the statute inapplicable to this cause.

Appellant's ground of error is overruled.

## VI. DID THE TRIAL JUDGE RULE ON APPELLANT'S MOTION FOR NEW TRIAL?

Bonner asserts in the fifth ground of error of the brief that he filed that the trial court erred "in failing to rule on the [Appellant's] Motion for New Trial, or in the alternative, the court errored [sic] in overruling the Motion for New Trial." In light of the record, we are unable to understand how Bonner could in good conscience present this ground of error to this Court for review.

 The record clearly reflects that when the motion for new trial was called for hearing, Bonner did not present any evidence; he, instead, read in its entirety the written motion for new trial that had been filed. In *Taylor v. State,* 612 S.W.2d

566 (Tex.Cr.App.1981), this Court held that a motion for new trial is a mere pleading and does not prove itself. Thus, the appellant's motion for new trial stands unsupported by any evidence or testimony. After Bonner completed reading the motion for new trial, the trial judge asked the prosecuting attorney if he had anything to present, and he replied in the negative. The record then reflects the following words of the trial judge: "All right, your motion is overruled." Soon thereafter, the trial judge sentenced the appellant.

Appellant's ground of error is overruled.

Having disposed of the grounds of error presented by Bonner in the brief that he filed on appellant's behalf, we will now address the remaining grounds of error that are presented in the brief filed by Ward, who replaced Bonner while the case was pending on appeal. Ward filed a new brief on behalf of appellant.

## VII. WERE BONNER AND DEVINE INEFFECTIVE COUNSEL?

We find that Ward does not tarry in what he sees as one of the crucial issues in this cause, because in the very first ground of error he presents Ward asserts that "The Appellant was denied his right to assistance of counsel under the Sixth Amendment in that he was denied effective assistance of counsel." Ward claims that Bonner and Devine were ineffective counsel from prior to trial through the appellate stages of the case.

Because Ward bases his contention solely upon the Sixth Amendment to the Federal Constitution, we must decide the issue in light of the pronouncements by the Supreme Court of the United States on the subject of ineffective assistance of counsel. Cf. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Cr.App.1984); *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Cr.App.1980).

In deciding the issue of ineffective assistance of counsel that Ward presents, we pause to point out that "[e]xperience has taught us that in most instances where the claim of ineffective assistance of counsel is raised, the record on direct appeal is simply

not in a shape ... that would adequately reflect the failings of trial counsel." *Ex parte Duffy*, supra, at 513.

In this instance, no hearing has been conducted in the trial court on the issue of ineffective assistance of trial counsel. Therefore, in deciding the issue that Ward presents, we are limited to the present record on appeal that is before us.

■■ The Sixth Amendment right to counsel means that the accused is entitled to reasonably effective assistance of counsel. This does not, however, mean that the accused is entitled to errorless or perfect counsel. Generally speaking, isolated instances in the record that reflect errors of commission or omission do not cause counsel to become ineffective. Cf. *Jackson v. State* (Tex.Cr.App. No. 115–84, July 24, 1985).

■■ In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court enunciated a two prong test to determine whether under the Sixth Amendment trial counsel was ineffective counsel. First, it must be shown that counsel's performance was deficient, i.e., that his assistance was not "reasonably effective." If the first requirement has been satisfied, then the defendant must next affirmatively show prejudice. That is, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In gauging counsel's performance by the standards set forth by the Supreme Court, the benchmark question is "Whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* supra.

Ward asserts, inter alia, that Bonner and Devine were ineffective trial counsel because they did not seek a pretrial hearing on the admissibility of the extraneous offenses and the appellant's written confession.

[19] Although we agree with Ward that a pretrial hearing on these kinds of issues is preferred, especially in a death penalty case, nevertheless, even if a pretrial hearing is requested pursuant to Art. 28.01, V.A.C.C.P., the trial court is not required by law to hold such a hearing. He has the discretion to determine the merits of such motions as a motion in limine or a motion to suppress during the trial itself. *Bell v. State*, 442 S.W.2d 716 (Tex.Cr.App.1969). We find and hold that under the facts and circumstances of this cause the trial judge did not abuse his discretion.

Ward, either expressly or impliedly, also asserts that when Bonner and Devine went to trial, they did so "blindfolded and [functioned] in the dark of night." We cannot agree. We point out that initially Bonner and Devine did not have the best of any world. The State, however, factually at least, was in an enviable position. From the standpoint of the appellant, the facts he presented to the jury left a lot to be desired.

Experience and history teach us that the defense of alibi is not all that great of a defense. See, for example, *Akridge v. State*, 493 S.W.2d 928 (Tex.Cr.App.1973), in which that defendant presented an almost perfect defense of alibi but was still convicted and given the death penalty.

Experience also teaches us that attempting to overcome a written confession for the reasons that appellant presented in the trial court is similar to one trying to climb by himself the tallest mountain in the world.

The record reflects that prior to trial, pursuant to a motion for discovery, Bonner and Devine apparently saw all of the statements of the witnesses, obtained information concerning the lineups that were conducted by the police, were made aware of the names and addresses of all the State's witnesses, and received a copy of the appellant's written confession.

Ward also faults Bonner and Devine for not calling appellant's grandmother and father to testify. However, the record does not reflect what favorable facts, if any, they would have testified to on behalf of appellant. Furthermore, there is not anything in the record that might reflect or indicate that either Bonner or Devine or someone on their behalf did not interview these persons before trial, and that based upon those interviews they decided not to call appellant's grandmother and father to testify. For all this record shows, appellant's sister may have been his only hope in presenting independent testimony on his defense of alibi.

Ward further faults Bonner and Devine for not making a precise objection to the court's instructions regarding Pradia, the accomplice as a matter of law witness.

We have carefully examined the instructions that were given the jury regarding the accomplice witness Pradia, and have compared them with those suggested in *Mc Clung's Jury Charges for Texas Criminal Practice,* which has become almost the gospel to members of the criminal bench and bar when it comes to correct instructions to the jury. We believe, however, that *Mc Clung's,* like any other form book, should always be used as a guide and not as though what is said therein was written in stone, when it comes to giving correct instructions to the jury. We find that the instructions that were given substantially comport in all things with those found in *Mc Clung's,* which in this instance we find contains correct instructions to the jury when the State has presented an accomplice witness.

■■■ If we understand Ward's additional assertion under this part of his brief, it is that the trial court should have instructed the jury on Salazar's testimony. However, for the trial judge to have given such an instruction would have amounted to a comment on the evidence, which a trial judge in Texas is prohibited from doing. Art. 36.14, V.A.C.C.P.

■■■ Ward lastly faults Bonner and Devine for not calling witnesses at the punishment stage of the trial. History and experience, however, teach us that calling witnesses to testify at the punishment stage of a capital murder trial in Texas can be risky business. Cf. *Bodde v. State,* 568 S.W.2d 344, 348 (Tex.Cr.App.1978); *Brock v. State,* 556 S.W.2d 309 (Tex.Cr.App.1977). In fact, the records of death penalty cases that this Court has decided in the past reflect that it is not unusual or uncommon for a defendant who has been convicted of capital murder not to put on any testimony at the punishment stage of the trial. But, cf. *Blake v. Kemp,* 758 F.2d 523 (11th Cir.1985, 37 Cr.L. 2132).

In any event, the record does not reflect or indicate that Bonner and Devine did not investigate the possibility of putting on witnesses at the punishment stage of the trial, but for reasons not reflected by the record chose not to do so.

We must agree with Ward's assertion that Bonner's handling of appellant's appeal leaves a lot to be desired. However, the fact that Bonner was subsequently replaced by Ward, who has since adequately represented appellant in this appeal, renders such complaint moot.

Based upon a careful review of the totality of the representation rendered by Bonner and Devine, as reflected by the record that is before us, we are unable to state that their assistance was ineffective.

Appellant's first ground of error presented by Ward is overruled.

VIII. DID THE TRIAL COURT ERR IN SUSTAINING THE STATE'S CHALLENGE FOR CAUSE AS TO THE PROSPECTIVE JUROR MARTHA LEE OWENS?

Ward complains in the second ground of error he presents in the brief that he filed that the trial judge erred in sustaining the State's challenge for cause as to prospective juror Martha Lee Owens.

The record reflects that after the prosecuting attorney challenged Owens for cause, because of her beliefs on the death

penalty, Bonner commenced asking Owens a question, but then stated that he did not have any questions. Assuming arguendo that the alleged error is perfected, we find that the State's challenge for cause was properly sustained by the trial judge because Owens was disqualified under either *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), or *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).

Appellant's second ground of error is overruled.

IX. DID THE TRIAL JUDGE ERR IN ADMITTING INTO EVIDENCE ITEMS OF EVIDENCE SEIZED BY THE POLICE AT APPELLANT'S "PLAY MOTHER'S" RESIDENCE?

▆▆ In the third ground of error that he presents in the brief that he filed, Ward complains in particular of the admission into evidence of a shotgun that was seized at the residence of appellant's "play mother."

Ward contends that because it was not shown that appellant was connected to the shotgun that it became inadmissible evidence. We must overrule his contention.

The shotgun was connected to the appellant because it was found under the mattress of the bed that was located at his "play mother's" residence, where the evidence showed he either lived or stayed at from time to time. The bed was shown to be appellant's bed when he lived or stayed there.

In any event, we agree with the State that based upon the facts and circumstances of this case, if there was error, which we do not find, such was harmless beyond a reasonable doubt. Cf. *Simmons v. State*, 622 S.W.2d 111 (Tex.Cr.App.1981); *Ortega v. State*, 462 S.W.2d 296 (Tex.Cr.App.1970).

Appellant's ground of error is overruled.

X. WERE THE TRIAL COURT'S INSTRUCTIONS TO THE JURY ON THE ACCOMPLICE WITNESS PRADIA ERRONEOUS?

In the fourth ground of error that Ward presents in the brief that he filed, Ward complains of the trial court's instructions to the jury regarding the accomplice witness Pradia. For reasons we have previously stated, this ground of error is overruled.

Notwithstanding the fact that appellant is not entitled to hybrid representation, we have, nevertheless, carefully reviewed his pro se brief, but in doing so have found that we have already answered all of his contentions in our above discussions.

Finding no reversible error in any of the grounds of error that have been presented in the briefs filed in this cause, we affirm the judgment of the trial court.

ONION, P.J., and McCORMICK, MILLER and CAMPBELL, JJ., concur in result.

TOM G. DAVIS, J., not participating.

### OPINION JOINING JUDGMENT OF THE COURT

CLINTON, Judge.

In his plurality opinion Judge Teague returns to a fleeting period when the Court sometimes distinguished between cases proved by direct evidence and those proved by circumstantial evidence for purposes of deciding under what circumstances evidence of an extraneous offense is admissible. Recently in *Morgan v. State*, 692 S.W.2d 877 (Tex.Cr.App.1985) this Court pointed out that to determine admissibility of an extraneous offense there is "no conceptual necessity [thus] to differentiate" between the two kinds of evidence. *Id.*, at 879–880, n. 2. Aware of those developments and reading the plurality opinion, the bench and the bar will surely wonder what the Court is doing here today.

Under "E. BUT, THERE IS A THIRD PART TO THE TEST," Judge Teague correctly says the Court has looked for a "high degree of similarity between the primary offense and the extraneous offenses." Actually, though the Court may have made that kind of comparison without explication, the true rationale is that sim-

ilarity is part of parcel of the test of relevancy—not a "third part" of a test for admissibility. That is the essence of his quote for *Callazo*. Indeed, in the very next paragraph the first two sentences say, in effect, one and the same thing, *viz:*

> "In this instance, we find and hold that the extraneous offenses were relevant to a material issue in the case, namely, being the identification of appellant ... We also find and hold that there were sufficient common characteristics between the offenses."

My point would be made by saying instead that "the extraneous offenses were *relevant* to the material issue of identification in the case *because* they shared sufficient common characteristics."

With that said, I join the judgment of the Court.

Campbell, J., joins in this opinion.