TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00422-CR






George Howard Hack, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0954279, HONORABLE MACE B. THURMAN, JR., JUDGE PRESIDING







 Appellant George Howard Hack ("Hack") appeals a judgment of the district court
convicting him of aggravated sexual assault of a child, a first-degree felony. In four points of
error, Hack challenges the legal and factual sufficiency of the evidence, claims the verdict was
improper because the record does not reflect that he waived his right to a jury trial in writing, and
asserts that he was denied effective assistance of counsel. We will affirm the judgment of the
district court.


BACKGROUND


 On July 24, 1995, Cynthia Day, the victim's mother, left her three-year-old child
with a baby-sitter at Hack's home. When Day returned, her child was anxious to leave quickly,
and once home complained to her mother that she was hurting in "her baby-noonoo." Day later
explained the victim was referring to her vagina. Day thought initially that the victim may have
hurt herself while using the restroom because she was still potty-training. Day took her to the
restroom to examine her. While in the bathroom, the victim began screaming in pain, and Day
discovered the child's vaginal area was swollen and raw. Day dressed the victim and asked her
what happened. The victim told her that after "Barney," a children's television show, "Georgie
had hurt her privates with his fingers." "Georgie" is Hack's alleged nickname. Day testified that
prior to this occasion the victim had never accused anyone of sexually assaulting her.

 Day and the victim returned to Hack's house to confront Hack, and the victim
indicated that Hack was the man who assaulted her. Hack and his mother, Mary Bennett, with
whom Hack lived, denied the allegations. Day then took the victim to the hospital, where she was
examined. The police requested a second exam, so Day took the victim to her regular physician
Dr. Peter Hine approximately one day after the alleged offense occurred. Dr. Hine found redness
and an abrasion in the victim's vaginal area.

 After the assault, the victim regressed in her potty-training and began having
nightmares. She started seeing a therapist. At trial, the therapist testified that the regression in
potty-training was consistent with sexual abuse. Hack was convicted of aggravated sexual assault
of a child, a first degree felony, and was sentenced to five years in the Texas Department of
Criminal Justice Institutional Division. Following the trial, Hack filed a motion for new trial,
which the court denied. Hack now appeals his conviction on four points of error.


DISCUSSION

 Hack's first point of error challenges the legal sufficiency of the evidence. The
United States Supreme Court established the appropriate standard of review for legal sufficiency
questions in Jackson v. Virginia, 443 U.S. 307, 319 (1979). The Jackson test requires us to view
the evidence in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt. Id; Jones
v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), cert. denied, 118 S. Ct. 100 (1997). It
is not necessary that every fact point directly and independently to the defendant's guilt; it is
enough if the conclusion is warranted by the combined and cumulative force of all of the
incriminating circumstances. Banda v. State, 890 S.W.2d 42, 50 (Tex. Crim. App. 1994). When
assessing the sufficiency of evidence to support a conviction, we must consider all evidence which
the factfinder, whether rightly or wrongly, was permitted to consider. Thomas v. State, 753
S.W.2d 688, 695 (Tex. Crim. App. 1988).

 In support of his legal insufficiency claim, Hack argues that there is no evidence
of penetration, a necessary element of aggravated sexual assault. In the context of the aggravated
sexual assault statute, "penetration" has been defined by the court as meaning "to enter into" or
"to pass through." See Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992); Tex.
Penal Code Ann. § 22.021 (West Supp. 1999). From this definition, mere contact with the outside
of an object is not penetration of that object. Id. "But pushing aside and reaching beneath a
natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a
significant intrusion beyond mere external contact." Id. In Vernon, the court concluded that
penetration could occur as long as the contact with the victim was more intrusive than contact with
the outer vaginal lips. Id.

 From the evidence presented at trial, a rational trier of fact could have found
beyond a reasonable doubt that Hack's contact with the victim was more intrusive than mere
contact with her outer vaginal lips and therefore was penetration. At trial, the victim testified four
times that Hack put his fingers in her vagina. Her first testimony to that effect was to nod her
head in affirmance when asked if Hack put his fingers inside her. In later testimony, she twice
affirmatively stated that Hack "stuck [his fingers] in there." Finally, before concluding her
testimony, the prosecutor asked the victim if Hack "actually went inside [her] vagina," and the
victim nodded her head again in agreement. Furthermore, Dr. Hines testified that he found
redness in her vaginal area and an abrasion on her inner labia majora that could have been made
by a fingernail. Based on the testimony of the victim and Dr. Hines, a rational trier of fact could
have found beyond a reasonable doubt that Hack penetrated the victim. We therefore overrule
Hack's first point of error.

 Hack next attacks the factual sufficiency of the evidence supporting the verdict. 
The proper standard of review for a factual sufficiency question was articulated by this Court in
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd), and was later adopted
by the Court of Criminal Appeals in Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). Under this standard, the appellate court views all the evidence without the prism of "in
the light most favorable to the prosecution," and sets aside a verdict "only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust." Clewis, 922 S.W.2d
at 129; Stone, 823 S.W.2d at 381. The review must be appropriately deferential so as to avoid
the appellate court's substituting its judgment for that of the jury, and furthermore must not intrude
upon the factfinder's role as the sole judge of the weight and credibility of witness testimony. 
Clewis, 922 S.W.2d at 133; Jones, 944 S.W.2d at 648.

 Hack initially argues the evidence is factually insufficient because of contradictory
testimony presented at trial. The contradictions that Hack points to are of little significance. Hack
first cites the fact that the victim testified she thought Hack's hair was blond when it was actually
dark colored. Despite her apparent confusion over hair color, however, the victim still identified
Hack as the man who assaulted her on the day of the offense. Hack next points to testimony that
the victim complained in prior instances that her genital area hurt. In particular, Hack calls
attention to the testimony that prior to being assaulted, the victim was scooting her bottom on the
floor, complaining that it hurt. Day did acknowledge that the victim occasionally hurt herself
while using the restroom, causing discomfort in her genital area. She also testified, however, that
the extreme circumstances surrounding the incident on July 24, 1995--the victim's red and swollen
vagina and her screaming--never occurred before. Furthermore, the victim denied she was
scooting her bottom on the floor. The only people who contradicted her were two other children
present that day; the two adults baby-sitting the victim never testified they saw her engaging in the
behavior alleged by the two children. Finally, Hack points to Lourdes Kahmann's testimony that
the victim was not potty-trained, which Hack argues contradicts Day's testimony. The testimony
of the two women is not necessarily contradictory. Day testified that her daughter was "pretty
much potty-trained" by the day of the assault, and this testimony is supported by the fact that on
that day the victim was wearing underwear, not diapers. Lourdes testimony to the contrary was
based on her observations of the victim while baby-sitting her months before the day of the assault. 
Consequently, Lourdes cannot persuasively speak to the victim's level of potty-training on July
25, 1995.

 Hack further argues that the evidence is factually insufficient because none of the
testimony at trial placed him at his house with enough time to commit the alleged crime. Hack
points to the testimony of Mary Hale, Frances Aguilar, Jack Hale, Juanita Aguilar, and Mary
Bennett as the witnesses establishing that he did not have time to commit the offense. We disagree
with Hack's interpretation of the witnesses's testimony.

 The victim testified she was assaulted after "Barney," which ended at 4:00 p.m.,
and Day testified that she picked up the victim from the Hack's home around 5:00 p.m.; thus the
assault occurred sometime between 4:00 p.m. and 5:00 p.m. Mary Hale testified that she saw
Hack at a gas station at 4:10 p.m. Assuming she did, Hack still had ample time after leaving the
gas station to commit the offense. Hack mischaracterizes the testimony of Jack Hale and Frances
Aguilar. Hack states that Aguilar testified Hack did not arrive home until after Day returned for
the victim, and that Hale testified Hack did not arrive home until 4:30 p.m. This testimony refers
to the time they first saw Hack, not the time he arrived home. Quoting Hale's testimony, in fact,
thwarts Hack's argument because it places Hack at the scene of the crime at a time consistent with
the time the offense occurred. Juanita Aguilar testified she saw Hack at her house, which is within
walking distance of Hack's home, at 4:00 p.m. Again, even if this testimony is true, Hack still
had ample time to commit the offense. The only witness who testified that Hack was not at the
Bennett's house in time to commit the act was his mother, Mary Bennett. She testified that Hack
did not arrive home until after Day picked up the victim from Hack's house. Mary Bennett's
testimony is directly contradicted by the testimony of her husband George Bennett, who testified
that he saw Hack at the house before 4:00 p.m. The testimony at trial, despite Hack's contentions
to the contrary, supports the position that Hack had ample opportunity to commit the offense.

 In providing due deference to the trial court's judgment of the weight and credibility
of testimony, we fail to find that the verdict is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Consequently, we overrule Hack's second point of
error.

 In Hack's third point of error, he asserts that the verdict was improper because the
court's file does not reflect that he waived his right to a jury trial in writing as required by article
1.13 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 1.13 (West
Supp. 1999). In deciding this point of error, we will indulge every presumption in favor of the
regularity of the documents in the trial court, meaning that the recitations in the records of the trial
court, such as a formal judgment, are binding in the absence of direct proof of their falsity. 
Breazeale v. State, 683 S.W.2d 446, 450 (Tex. Crim. App. 1985) (opinion on rehearing). The
absence of a written jury waiver from the record on direct appeal does not overcome the
presumption of regularity and truthfulness of the judgment where there is not an objection to the
accuracy of the judgment, and there is no affirmative showing in the record that a written jury
waiver was not executed by the defendant. Meek v. State, 851 S.W.2d 868, 870 (Tex. Crim. App.
1993).

 In the present case, the district court entered a judgment that states in relevant part:


On the 28th day of May, A.D., 1997, this case was called for trial, and the State
appeared by her District Attorney, and the defendant, George Hack, appeared in
person in open court, his counsel, Cheryl Johnson, also being present, and the said
defendant having been duly arraigned pleaded NOT GUILTY to the indictment
herein, both parties announced ready for trial, and thereupon a trial by jury was
waived by all parties . . . .



Hack objected to the accuracy of this judgment in a motion for new trial. At the hearing on
Hack's motion, both the prosecutor in the case, Bill Mange, and the defense counsel, Cheryl
Johnson, testified. Johnson testified that she was unsure if a jury waiver was signed in the case,
but admitted that during trial she told the judge she believed Hack waived his right to a jury trial
in writing. At the hearing, the prosecution entered into evidence a portion of the trial transcript
corroborating Johnson's admission. The exhibit introduced at the hearing also reflects that Hack
informed the trial judge in open court that he did not desire a jury trial, and Mange indicating that
Hack had waived a jury trial in writing. Mange further testified at the hearing that he had specific
independent recollection of a jury waiver having been signed by himself, Hack, and Johnson. 
Mange apparently made notes to that effect in the State's file. Mange also testified that he
accepted the waiver document from Johnson with Johnson and Hack's signature already affixed,
and then signed it himself before tendering it to the court. The testimony of the prosecutor and
defense counsel at the hearing, coupled with the exhibit, all of which is contained in the record,
constitutes an affirmative showing that Hack executed a written jury waiver. Consequently, we
find the presumption that the judgment is regular and truthful is not overcome by Hack. We
therefore overrule appellant's third point of error.

 In Hack's fourth point of error, he alleges he was denied effective assistance of
counsel. The standard of review for ineffective assistance of counsel was formulated by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), and later adopted
by the Texas Court of Criminal Appeals in Hernandez v. State, 726 S.W.2d 53, 55-57 (Tex. Crim.
App. 1986). For this Court to reverse the district court's decision based upon ineffective
assistance of counsel, the defendant must meet a two-prong test. First, the defendant must show
that counsel's representation fell below an objective standard of reasonableness. Hernandez, 726
S.W.2d at 55. After meeting this first prong, the defendant must then show prejudice by
demonstrating that, but for counsel's errors, the result of the proceeding would be different. 
Hernandez, 726 S.W.2d at 55. This standard is applied to the totality of the representation and
is therefore not determined by isolated acts or omissions of counsel. Moore v. State, 700 S.W.2d
193, 205 (Tex. Crim. App. 1985). Furthermore, this Court "must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable professional assistance; that is,
the defendant must overcome the presumption that, under the circumstances, the challenged action
'might be considered sound trial strategy.'" Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim.
App. 1993) (quoting Strickland, 466 U.S. at 688-89). Lastly, in applying the two-prong standard,
we must be highly deferential to counsel's judgment. Ingham v. State, 679 S.W.2d 503, 509
(Tex. Crim. App. 1984).

 Hack argues that he was denied effective assistance of counsel because his defense
attorney failed to withdraw his waiver of a jury trial when she found out that Judge Thurman, not
Judge Blackwell, would be presiding over his case. Johnson initially advised Hack to waive a jury
trial because she thought Judge Blackwell would provide greater leniency than a jury. On the
morning of trial, she found out Judge Thurman rather than Judge Blackwell would be the presiding
judge. Johnson felt that at that late date, she could not withdraw Hack's waiver.

 It is not clear from the cases on withdrawing jury waivers whether Johnson could
have withdrawn Hack's waiver of a jury trial in this instance. Regardless of whether she could
have withdrawn the waiver, we look to the totality of Johnson's performance in applying the
Strickland test, and the record shows that Hack was provided with reasonable representation. 
Johnson was well acquainted with the facts of the case and thoroughly cross-examined each of the
State's witnesses. Johnson also elicited the testimony of fifteen defense witnesses. Deciding to
waive a jury trial was a strategic decision that cannot be considered in isolation from the rest of
the defense strategy exercised by Johnson. Even assuming without deciding that Johnson erred
in making the decision to advise Hack to waive a jury trial, a defendant is not guaranteed errorless
representation. Ingham, 679 S.W.2d at 509.

 Since Hack failed to show that Johnson's representation fell below an objective
standard of reasonableness and therefore has not met the first prong of the Strickland test, we need
not consider whether Hack demonstrated that the outcome of the trial would have been different
but for Johnson's error. We overrule Hack's fourth point of error.


CONCLUSION


 Having held that the verdict against Hack was legally and factually sufficient, that
the judgment against him was accurate regardless of the absence of a written jury waiver, and that
he received effective assistance of counsel, we affirm the decision of the district court.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Powers and Kidd 

Affirmed

Filed: December 17, 1998

Do Not Publish



PAN STYLE="font-family: CG Times Regular"> In Hack's fourth point of error, he alleges he was denied effective assistance of
counsel. The standard of review for ineffective assistance of counsel was formulated by the
United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), and later adopted
by the Texas Court of Criminal Appeals in Hernandez v. State, 726 S.W.2d 53, 55-57 (Tex. Crim.
App. 1986). For this Court to reverse the district court's decision based upon ineffective
assistance of counsel, the defendant must meet a two-prong test. First, the defendant must show
that counsel's representation fell below an objective standard of reasonableness. Hernandez, 726
S.W.2d at 55. After meeting this first prong, the defendant must then show prejudice by
demonstrating that, but for counsel's errors, the result of the proceeding would be different. 
Hernandez, 726 S.W.2d at 55. This standard is applied to the totality of the representation and
is therefore not determined by isolated acts or omissions of counsel. Moore v. State, 700 S.W.2d
193, 205 (Tex. Crim. App. 1985). Furthermore, this Court "must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable professional assistance; that is,
the defendant must overcome the presumption that, under the circumstances, the challenged action
'might be considered sound trial strategy.'" Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim.
App. 1993) (quoting Strickland, 466 U.S. at 688-89). Lastly, in applying the two-prong standard,
we must be highly deferential to counsel's judgment. Ingham v. State, 679 S.W.2d 503, 509
(Tex. Crim. App. 1984).

 Hack argues that he was denied effective assistance of counsel because his defense
attorney failed to withdraw his waiver of a jury trial when she found out that Judge Thurman, not
Judge Blackwell, would be presiding over his case. Johnson initially advised Hack to waive a jury
trial because she thought Judge Blackwell would provide greater leniency than a jury. On the
morning of trial, she found out Judge Thurman rather than Judge Blackwell would be the presiding
judge. Johnson felt that at that late date, she could not withdraw Hack's waiver.

 It is not clear from the cases on withdrawing jury waivers whether Johnson could
have withdrawn Hack's waiver of a jury trial in this instance. Regardless of whether she could
have withdrawn the waiver, we look to the totality of Johnson's performance in applying the
Strickland test, and the record shows that Hack was provided with reasonable representation. 
Johnson was well acquainted with the facts of the case and thoroughly cross-examined each of the
State's witnesses. Johnson also elicited the testimony of fifteen defense witnesses. Deciding to
waive a jury trial was a strategic decision that cannot be considered in isolation from the rest of
the defense strategy exercised by Johnson. Even assuming without deciding that Johnson erred
in making the decision to advise Hack to waive a jury trial, a defendant is not guaranteed errorless
representation. Ingham, 679 S.W.2d at 509.

 Since Hack failed to show that Johnson's representation fell below an objective
standard of reasonableness and therefore has not met the first prong of the Strickland test, we need
not consider whether Hack demonstrated that the outcome of the trial would have been different
but for Johnson's error. We overrule Hack's fourth point of error.