James Allen MITCHELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–85–00533–CR.

Court of Appeals of Texas, San Antonio.

Nov. 30, 1988.

Rehearing Denied Jan. 6, 1989.

Thomas Rocha, Jr., San Antonio, for appellant.

Sam Millsap, Jr., Former Criminal Dist. Atty., Fred G. Rodriguez, Criminal Dist. Atty., Barbara Hervey, San Antonio, for appellee.

Before BUTTS, CANTU and CHAPA, JJ.

## OPINION

CANTU, Justice.

This is an appeal from a conviction for aggravated sexual assault. TEX.PENAL CODE ANN. § 22.021(a)(5) (Vernon Supp. 1986). *See* now TEX.PENAL CODE ANN. §§ 22.021(a)(1)(B)(ii) and 22.021(a)(1)(B)(i) (Vernon Supp.1988).

The facts giving rise to the indictment are as follows:

On May 10, 1985, an informant called a Lt. Moreno of the San Antonio Police Department to give him 13 polaroid photographs depicting appellant and a female child engaging in lewd conduct. The informant allegedly had obtained them from a burglar who had found them in appellant's residence. Once the identity of the appellant was determined, appellant was contacted on May 18, 1985 by San Antonio police officers at a ranch in Harper, Texas, and advised that he was a suspect. On May 20,

1985, appellant, without benefit of counsel, went to the San Antonio Police Department and gave an incriminating statement. He was subsequently placed in jail where he remained through trial. The child's testimony was subsequently preserved on videotape made by a case worker for the Texas Department of Human Resources. The tape allegedly depicts the child using a doll and explaining to the caseworker what she and appellant were doing in the pictures.[1] On October 17, 1985, appellant appeared for trial and entered a plea of nolo contendere. Appellant was found guilty and sentenced to 60 years' imprisonment.

This appeal was originally abated by an opinion and order delivered on August 29, 1986. The abatement was necessary because of appellant's contentions that he was deprived of effective assistance of counsel throughout the guilt/innocence and punishment phases of his trial. Specific instances of omissions were pointed out by appellant and the record appeared to support much of what he alleged. Because we were not in a position to evaluate the totality of trial counsel's performance from the record before us, we ordered that the appeal be abated and that the cause be remanded to the trial court with instructions to develop a record on the single issue of ineffective assistance of counsel.

Pursuant to our order of remand the trial court conducted a hearing on October 1, 1986, which is now reflected in a voluminous transcription of testimony including that of appellant, his sister, Joann Jones, trial counsel Roger Jones, and a member of the San Antonio Bar, Louis T. Rosenberg.

On original submission appellant complained of ineffective assistance of counsel and identified the following instances of claimed ineffectiveness:

(1) Failure to adequately prepare for trial;

(2) failure to obtain pretrial discovery;

(3) failure to suppress appellant's confession;

(4) failure to suppress the polaroid photos;

(5) failure to suppress the videotape testimony, and

(6) subjecting appellant to the equivalent of a plea of guilty without benefit of a plea bargain.

The test to be applied under the 6th Amendment of the United States Constitution in determining whether an accused has received effective assistance was established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*See also Ingham v. State,* 679 S.W.2d 503 (Tex.Crim.App.1984) (en banc).[2]

Whether this standard has been met is to be judged by "the totality of the representation," rather than by isolated acts or omissions of trial counsel. *Ex parte Raborn,* 658 S.W.2d 602 (Tex.Crim.App.1983) (en banc). Generally isolated errors reflected in the record do not render counsel ineffective. *Moore v. State,* 700 S.W.2d 193, 205 (Tex.Crim.App.1985) (en banc). The test is to be applied as of the time of trial, not through hindsight. *Hawkins v. State,* 660 S.W.2d 65, 75 (Tex.Crim.App. 1983) (en banc).

---

**1.** All the facts recited herein are taken from written stipulations offered during the plea of nolo contendere.

**2.** Under our TEX. CONST. art. I, § 10, adequacy of representation by retained or appointed counsel is being judged by the "reasonably effective assistance of counsel" standard. *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Crim.App.1980) (en banc).

The burden is upon the appellant to establish ineffective assistance of counsel, *United States v. Killian,* 639 F.2d 206 (5th Cir.1981), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981), and to overcome the "strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. at 2066.

Thus, the appellant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Id.*

Appellant's case was originally set for trial on September 16, 1985, some four months following his arrest. Trial counsel Roger Jones was retained by family members of appellant on May 23, 1985, three days following the arrest.

The first trial setting notice mailed to attorney Jones informed him that all pretrial motions had to be filed by September 9, 1985, or risk being waived. *See* TEX. CODE CRIM.PROC.ANN. art. 28.01 (Vernon Supp.1988).

Prior to the September 16, 1985 trial setting attorney Jones, on September 12, 1985, filed a motion seeking to reset the case to a later date. The motion was supported by a copy of military orders and revealed that attorney Jones was to be on active duty from September 16, 1985, through September 27, 1985.

There is some evidence in the record to support appellant's contention that attorney Jones failed to obtain needed pretrial discovery. On September 20, 1985, attorney Jones filed a motion to produce the video tape. This motion was, as the subsequent hearing revealed, filed by a member of Jones' office in his absence.

The record reflects that other motions were apparently filed on the same day. These motions included a motion to question the child's psychologist, to have the child examined by an independent examiner and to suppress the photos and the appellant's statement. These motions were apparently never presented to the trial court and were not ruled upon until November 25, 1985. The order was entered *nunc pro tunc* to September 20, 1985.

One can surmise that these motions were never addressed prior to trial because none contains a certificate of service to the State's attorney. Presumably they were filed and lost in the mire of paperwork in the court's file.[3]

Unlike the motions ruled upon *nunc pro tunc,* the motion to produce the video tape seems to have escaped action by all.

The punishment phase was held on November 1, 1985. Thus the *nunc pro tunc* ruling on the above described motions occurred almost four weeks following appellant's sentencing and at least 13 days after current counsel on appeal entered the picture with the filing of appellant's notice of appeal.

On October 17, 1985, appellant appeared for trial and entered a plea of nolo contendere. Appellant and attorney Jones waived rights to a jury trial and reading of the indictment. The trial court advised appellant that he was not eligible for probation[4] and that if found guilty could be sentenced to between 5 and 99 years or life imprisonment. It did not, however, advise appellant that a plea of nolo contendere was in fact, the equivalent of a plea of guilty. *See Chavarria v. State,* 425 S.W.2d 822 (Tex. Crim.App.1968).

The State's evidence consisted entirely of written stipulations. Included in the evi-

---

3. The motion to reset filed on September 12, 1985, does not contain a certificate of service either but the motion was apparently acted upon by the court the following day with or without the State's participation. The motion to produce does not contain a certificate of service either.

4. Although the trial court advised appellant he was not going to be eligible for probation, the trial court ordered a psychological report and pre-sentence investigation prior to sentencing. The case was then recalled on the probation docket on November 1, 1985, where the court officially denied appellant probation as evident from the court's docket sheet entry.

dence is appellant's written confession. Although the State deleted portions of the statement containing alleged exculpatory matter, attorney Jones made no effort to tender an unaltered version of the confession.[5] *See TEX.CODE CRIM.PROC.ANN. art. 38.24 (Vernon 1965, repealed by TEX. R.CRIM.EVID. eff. Sept. 1, 1986 [Acts 1985, 69th Leg., ch. 685, § 9(b)] see now TEX.R.CRIM.EVID. 106 and 107); Harrington v. State, 547 S.W.2d 616 (Tex. Crim.App.1977); Westbrook v. State, 522 S.W.2d 912 (Tex.Crim.App.1975).*

■ Attorney Jones did object to the State's offer of the altered confession into evidence but otherwise obtained no ruling on the objection. Appellant offered no evidence. While suppression of evidence is left to the court, it is the duty of defense attorney to attempt through all legal means to have evidence detrimental to his client suppressed. Additionally, there was no plea bargain agreement disclosed to the trial court. If in the client's best interest, a plea bargain should be considered. Appellant was found guilty and a psychological and pre-sentence investigation was ordered.

On November 1, 1985, the punishment phase of the trial was held. Appellant presented two witnesses and testified himself. In testifying appellant judicially confessed to the offense convicted of and admitted to conduct no longer the basis of prosecution.[6]

Additionally, the State was permitted, without objection to make use of photographs not used during the guilt/innocence phase of the trial. These photographs were neither marked for identification nor tendered into evidence, but somehow managed to end up being viewed by the trial court.

Although these photographs have never been made a part of the record the testimony describing them clearly reveals their prejudicial nature.

Appellant further contends attorney Jones failed to adequately prepare for trial. Relevant testimony was offered at the October 1, 1986 hearing held following remand to the trial court. Joann Jones, appellant's sister, testified that she retained attorney Jones to represent her brother on May 23, 1985, and paid a retainer of seven thousand dollars. The claim is substantiated by a signed receipt and copy of cashier's check dated the same day. According to Joann Jones, attorney Jones immediately informed her that there would not be a jury trial because of the nature of the charges. This decision was made prior to attorney Jones conducting any investigation or interviews with appellant. According to Joann, attorney Jones showed no interest in obtaining names of possible witnesses but agreed to notify her when the case was to be tried. On the day of trial Joann was not notified and did not appear in court. According to her, attorney Jones did not call her because he had failed to appear in court the morning the case was called, and the trial judge was already angry because attorney Jones could not be found. Following the plea ceremony attorney Jones contacted Joann to inform her that the photographs had been kept out of evidence and that one of the charges had been dropped.

Attorney Jones testified that at the time of trial he had been licensed for six years and that he had extensive military legal training. He admitted, however, that he had tried maybe five felony jury cases, but claimed to have handled over 200 military trials.

According to attorney Jones he went to see appellant in jail about ten times. He also testified to efforts exerted in search of a psychiatrist to examine appellant in jail.

---

5. An unaltered version of the confession is now before this Court as contained in the personal file of attorney Jones sealed by order of the trial court for examination by this Court.

6. At the plea ceremony, the State waived and abandoned that portion of the indictment alleging a penetration of the child's sexual organ and elected to proceed only on the paragraph alleging penetration of the child's mouth by the sexual organ of appellant. Much emphasis was placed on appellant's conduct in support of the waived portion of the indictment.

According to Jones he talked to two psychiatrists and one psychologist before securing the services of a Dr. Harold Jones.[7] He further claimed to have filed a motion to permit Dr. Jones to examine appellant in jail. No such motion exists in the court's record.[8]

Attorney Jones testified that he never received a written report from any of the psychiatrists or psychologist. Attorney Jones was questioned about the time log maintained in the case, but refused to reveal it. His personal file was ordered sealed and is before us.[9] It reflects very informal note keeping but is quite revealing in many respects.

Attorney Jones discussed the various pretrial motions he prepared and filed with the trial court. Although he recalled filing a motion to view the video tape of the complainant he admitted not going to view it.[10] He further admitted not pursuing the motion seeking to have the child examined. His explanation of the motion to suppress causes us much concern.

■■■ According to attorney Jones, the motion was overruled after a hearing. The record clearly reflects that it was waived and abandoned. When pressed further on the discrepancy, Jones admitted that the motion was never urged to a hearing with evidence. His uncontradicted testimony reveals that he discussed the motion with the trial court and was persuaded by the trial judge that it would not be granted under any circumstances. Jones' informal discussion with the trial court appears to be the basis for waiving and abandoning any effort to seek suppression of the photographs and confession.[11]

The record does not reflect when these discussions with the trial court regarding

7. There is contained in attorney Jones' personal file two identical letters presumably written to a Dr. Joe Stevens and Dr. Alfred Williams on July 30, 1985 and July 26, 1985. Both letters sought the services of the physicians as experts. There is no indication that either responded to the letters of inquiry.

8. However, in examining attorney Jones' personal file sealed by the trial court and now before us we find a motion entitled *MOTION FOR PSYCHIATRIC EXAMINATION BY PRIVATE PSYCHIATRIST*. This motion seeks to have Dr. Harold Jones examine appellant at the jail. The order attached is conformed and alleges that it was granted by Judge Rickhoff on September 10, 1985. Judge Tom Rickhoff, we judicially note, is the judge presiding in the 289th District Court of Bexar County and such court has been legislatively designated as a court giving primary preference to cases and proceedings under Titles 2 and 3 of the Family Code. *See* TEX.GOV'T.CODE ANN. § 24.466 (Vernon 1988).

Since the motion does not contain a certificate of service and because it was never filed with the court's papers, it is *possible* that the order was obtained ex parte and used by Dr. Jones without the trial court's knowledge.

Attorney Jones' file also reveals a letter dated October 18, 1985, informing Dr. Jones that the documents he sought were being enclosed. This letter was thus written to Dr. Jones the day after appellant's plea of nolo contendere was entered and it is unclear what Dr. Jones' participation in the case consisted of.

9. We do not approve of the trial court's refusal to permit defense counsel access to attorney Jones' file for examination purposes. Such a ruling hampers the very purpose for the remand.

10. Jones testified that he relied upon what police officers wrote about the video tape after they saw it.

Among counsel's duties is that of making an independent investigation of the facts of his client's case. *Ex parte Ewing*, 570 S.W.2d 941, 947 (Tex.Crim.App.1978).

In addition to acquainting himself with the facts, counsel must also acquaint himself with the law involved in the case if he is to render reasonably effective assistance of counsel. *Flores v. State*, 576 S.W.2d 632 (Tex.Crim.App. 1978).

11. The actions of a trial court prejudging the merits of a motion to suppress without benefit of sworn testimony is intolerable. Nevertheless, it is trial counsel that is charged with the affirmative duty of advocating his client's best interests even in the face of formidable odds, particularly when he is aware that the trial court has clearly overstepped its authority in conveying his intended ruling on a matter prejudged without benefit of evidence. Trial counsel is ineffective as a matter of law when he allows himself to be intimidated into surrendering or waiving valuable rights of an accused.

The following is representative:

Q: Do you feel that you were incompetent in that the defendant's confession subsequently was used as evidence in the case and was not suppressed.

A: No, I do not.

Q: And why is that, Mr. Jones?

the motion to suppress took place. It is apparent, however, that no hearing date was obtained on the pretrial motions and that no subpoenas were ever requested in support of any of the motions.

■ Fear of having the trial court overrule a motion to suppress does not justify not pursuing it to a ruling. *Cf. Butler v. State*, 716 S.W.2d 48, 56 (Tex.Crim.App. 1986) (en banc). Moreover, it is clear that Jones was not familiar with the purpose and implications of a *Jackson v. Denno* hearing.[12]

■ Whether appointed or retained, counsel must ensure that guilty pleas are entered only as an informed and voluntary choice, by actually and substantially assisting defendant in deciding whether to plead guilty; it is essential that counsel be familiar with the facts and the law, including potential defenses, so that he can fully advise defendant of options available to him. *Diaz v. Martin*, 718 F.2d 1372, 1378 (5th Cir.1983), *cert. denied*, 466 U.S. 976, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984).

The indictment returned against appellant alleged the commission of aggravated sexual assault by appellant upon a minor female and contained two alleged "counts." [13] "Count one" alleged an offense under § 22.011(a)(2)(B) and § 22.021(a)(5) [14] while "Count two" relied upon § 22.011(a)(2)(A) and § 22.021(a)(5).[15]

That attorney Jones was deficient in the area of criminal law is further illustrated

by his admitted belief that under the instant indictment appellant could have been found guilty under both allegations. Jones admittedly was unfamiliar with the law regulating the use of counts in an indictment. *See* TEX.CODE CRIM.PROC.ANN. art. 21.24(b) (Vernon Supp.1988).

Attorney Jones was aware that appellant had a history of mental problems, including an alleged stay at Rusk State Hospital. He was further on notice that appellant was functionally illiterate. Yet there is nothing in the record to indicate any effort to formulate strategy seeking benefit from these drawbacks as defensive or mitigating factors.

According to attorney Jones, the psychiatrist, Dr. Jones, conveyed the results of his examination of appellant by telephone. Dr. Jones allegedly told Jones that appellant had an infatuation with small children and it was surprising that he had not done this before and was very likely to do it again. Dr. Jones allegedly indicated that if he were called to testify he would have to indicate that to their profession there is no known effective cure for such a condition. There is no written report from Dr. Jones in either the appellate record or in attorney Jones' sealed file. Nor is there any indication that any other psychiatrist allegedly contacted concurred with Dr. Jones. There simply is no way of knowing what other efforts were made by attorney Jones in pursuance of appellant's mental history as a possible defense or in mitigation.

---

A: Because the judge told me he wasn't going to suppress it.

**12.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**13.** The instant indictment refers to separate counts. In reality they are but separate paragraphs charging variations of the same offense, aggravated sexual assault.

**14.** § 22.011(a)(2)(B) provided:
   A person commits an offense if the person intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor; ..., *See now* TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(ii) (Vernon Supp.1988).

**15.** § 22.011(a)(2)(A) provided:
   A person commits an offense if the person intentionally or knowingly causes the penetration of the anus or female organ of a child by any means; ..., *See now* TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp.1988).
§ 22.021(a)(5) provided:
   A person commits an offense if the person commits sexual assault as defined in Section 22.011 of this code and the victim is younger than 14 years.

In explaining his trial strategy, attorney Jones revealed that he felt that he should avoid having to cross examine the young victim at all costs. He believed that if he successfully kept the photographs and confession out, he would be forced to confront the young child. He further considered the benefit to be gained from sparing the child the unpleasantries associated with testifying in court. Much can be said about the traumatic unpleasantries associated with crimes involving young children. Our focus in this case, however, must remain on the primary responsibilities of an attorney representing an accused in such cases. Clearly the loyalty belongs to the client, foremost; but that is not to say that considerations for the child victim are not appropriate in representing the client effectively.

Counsel owes a duty of loyalty to his client. Loyalty is the most basic of counsel's duties. *Strickland v. Washington,* 466 U.S. at 692, 104 S.Ct. at 2067.

Moreover, counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064.

Thus a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceedings. *Strickland v. Washington,* 466 U.S. at 685, 104 S.Ct. at 2063.

Effective assistance of counsel is essential to assure defendant's fundamental right to a fair trial because it is through counsel that a defendant's other rights are secured and the prosecution's case is subjected to meaningful adversarial testing. *Id.*

A two pronged test must be satisfied before a claim of ineffective assistance of counsel can succeed. *Moore v. State,* 700 S.W.2d at 205.

The first prong requires that appellant show counsel's performance was deficient under prevailing professional norms. *Moore v. State, Id.*

In meeting this first requirement, appellant must overcome a strong presumption that counsel's performance was "within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065.

The second prong of the test requires that appellant show a reasonable probability that but for counsel's errors the result would have been different. *Strickland v. Washington,* 466 U.S. at 692, 104 S.Ct. at 2067. In other words, counsel's errors must be such as to undermine confidence in the outcome.

The following colloquy is representative of attorney Jones' approach to the situation:

[Prosecutor] MR. BAXTER:

Q: In considering your responsibility to your client, did you at that time also consider that it might be found in the defendant's favor that you and he avoid placing the child in that situation?

A: That's always a factor that I consider. I don't care who I tear on the stand, as far as taking care of my client, but what I hope is that if I can impress upon the Court that we saved the child this additional turmoil that somehow this will be to our benefit.

Q: Did you mention that to the Court at the time?

A: I most assuredly did. I did that at the sentencing.

Q: Did you feel, then, after you got the Court's advice on whether the Court felt the evidence was suppressible or not, that your focus had to turn to minimizing the punishment that might be received?

A: That's a fair assessment.

If attorney Jones formulated strategy in mitigation of punishment the record does not bear it out. At the punishment phase, attorney Jones called appellant's niece and appellant's sister as witnesses. Both of them testified generally about the child

victim's behavioral problem due to a sibling rivalry and to domestic problems with the child's stepparent.

Appellant, called upon to testify by attorney Jones confessed to the offense convicted of in detail. In doing so, appellant related how the idea to engage in sexual activity with the child and to preserve such activity on photographs was partially the child's. In graphically describing appellant's conduct with the child the prosecutor used the photographs kept out of evidence at the guilt/innocence phase.[16] Whatever benefit was derived from non use of the photographs earlier was lost because the trial court was permitted to view them immediately before assessing punishment. We fail to perceive how this testimony was mitigating in nature.

Attorney Jones testified that he obtained from the prosecutor an offer of 40 years in return for appellant's plea of guilty and that he conveyed this offer to appellant who immediately turned it down. Although appellant takes issue with the testimony of attorney Jones we see no reason to doubt that such an offer was in fact made and conveyed to appellant.

However, inasmuch as little effort was ever exerted by attorney Jones on behalf of appellant in an adversarial capacity we can see little reason to expect the State's attorney to explore plea bargaining in a serious vein.

Plea bargaining involves a giving and taking on both sides. BLACK'S LAW DICTIONARY, at 1037 (5th ed. 1979). When one side is unwilling or unlikely to advocate on behalf of his client there is no reason to expect the other side to be willing to reduce whatever adversarial advantage it may already have. Hence without effort on the part of appellant's attorney to seek possible flaws in the State's case, the prosecutor would not be persuaded to seek less than the asking price, which in most cases exceeds the actual value of the case.

We see no effort to cause meaningful plea bargaining.

Appellant was thus presented with two possible alternatives under counsel's announced decision to try the case to the court. One of these alternatives required a full blown trial to the court on a plea of not guilty, in which case a pursuance of pretrial motions might have revealed procedural and/or evidentiary problems.

The other possibility required a plea of guilty or nolo contendere before the court.[17] In the absence of a plea bargain, such a plea necessarily presupposes that there are no other options available and appellant is left to the mercy of the court in regard to punishment. In such a case nothing is lost by insisting first on hearings on pretrial motions.[18] But in the instant case every possibility was abandoned

---

**16.** It is unclear from the record why the photographs were not a part of the guilt/innocence phase record. Perhaps the State's attorney voluntarily chose not to include them as part of the stipulated evidence.

**17.** A plea of not guilty on stipulated evidence was also a possibility.

**18.** The defendant has a constitutional right to, at some stage in the proceedings, object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness. *Jackson v. Denno,* 378 U.S. 368, 376–77, 84 S.Ct. 1774, 1780–81, 12 L.Ed.2d 908.

The procedure for challenging the voluntariness of a statement or confession is contained in TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 1988).

The adversarial process protected by the Sixth Amendment requires that the accused have

"counsel acting in the role of an advocate." *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657, 666 (1984).

When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. *United States v. Cronic,* 466 U.S. at 656–657, 104 S.Ct. at 2045–2046.

If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. *United States v. Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047.

In the instant case, the result was complete abandonment of his client's well-established constitutional and statutory rights to a reliable

in favor of the expediency of a plea seeking leniency from the court without any evidence that counsel ever explored the trial court's feelings toward such offenses. Moreover, the record belies any meaningful effort at the punishment phase to mitigate the punishment. If anything, the defensive evidence implies the need for greater punishment.

The Honorable Louis T. Rosenberg, a member of the San Antonio Bar practicing criminal law evaluated the court's file and the testimony of attorney Jones.

■ Rosenberg pointed to numerous deficiencies in representation and concluded that appellant was not afforded effective assistance of counsel. We agree with much of Rosenberg's evaluation. Still it is not sufficient that each deficiency rise to the level of ineffective assistance of representation in order to prejudice an accused's right to a fair trial.

■ In the case before us we are persuaded that the cumulative effect of the identified deficiencies prejudiced appellant's rights to a fair trial. The numerous fundamental procedural omissions of counsel coupled with his evident lack of familiarity with the law applicable to this case indicate a lack of the amount of preparation and degree of skill reasonably required of counsel in a criminal trial. The representation, which we find to have been manifestly ineffective, clearly amounts to an abdication of an attorney's responsibility to effectively advocate his client's cause.

■ Before we can reverse, however, we must also find that, but for counsel's unprofessional errors, the result of the proceeding would have been different. That is, we must be able to conclude that the evidence of deficiency was sufficient to undermine confidence in the outcome of appellant's trial. Our focus then must center on whether, considering all the circumstances, a plea of nolo contendere without a plea bargain was called for.

determination regarding the admissibility of the

■ We must assume that among one of the reasons considered by counsel in arriving at his recommended plea of nolo contendere was his mistaken belief that appellant was exposed to conviction for two offenses rather than one under the instant indictment. If appellant's election was based upon erroneous advice, the plea was not entered voluntarily and knowingly.

In *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir.1974) it was stated,

It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an "understanding of the law in relation to the facts." The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimal level.

*See also, United States v. Rumery,* 698 F.2d 764 (5th Cir.1983); *Cooks v. United States,* 461 F.2d 530 (5th Cir.1972).

Appellant was assessed a term of confinement for sixty years. Such a term for all practical purposes, is equivalent to the maximum term assessable under the statute. Would appellant have received such punishment in any event?

Clearly there is much an attorney could have done to minimize the prejudice inherent in such a case, even under the scenario we have reviewed. Minimally counsel could have objected to the trial court viewing prejudicial photographs not in evidence. Still further, there is no apparent reason for appellant's damaging testimony at the punishment phase.

statement and photographs.

In light of all the circumstances, this Court is compelled to concede that the manifest ineffectiveness of counsel's representation resulted in actual and substantial disadvantage to appellant's possible defense and evidence of mitigation. Under the second prong in *Strickland v. Washington,* we are forced to conclude that evidence of deficiencies in counsel's performance was sufficient to undermine confidence in the outcome of appellant's trial.

The judgment is reversed and the cause is remanded for new trial.

CHAPA, Justice, concurring.

I concur that appellant has met his burden as to both prongs of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The record discloses sufficient ineffective assistance of counsel to require a reversal.

The judgment should be reversed and the cause remanded for a new trial.

BUTTS, Justice, dissenting.

Although I joined in the order to abate this case and remand for a hearing to determine whether appellant was denied effective assistance of counsel, on reflection I believe that order was unwarranted. This action is, in reality, a collateral attack on the conviction. We are, in my opinion, conducting a typical post-conviction procedure as under TEX.CODE CRIM.PROC. ANN. art. 11.07 (Vernon 1977 and Supp. 1988). *See Ex parte Burns,* 601 S.W.2d 370 (Tex.Crim.App.1980).

A plea of guilty (in the present case nolo contendere) is not knowingly and voluntarily entered if it is made as a result of ineffective assistance of counsel. *Id.* at 372. But a defendant's constitutional right to counsel does not mean errorless counsel. *Howell v. State,* 563 S.W.2d 933, 937 (Tex. Crim.App.1978).

In the present case the plea of nolo contendere to one of the counts in the indictment resulted in a sentence of 60 years.

During the plea proceedings the trial court followed the mandates of TEX.CODE CRIM.PROC.ANN. art. 26.13 (Vernon Pamphlet 1988). Answering the court's questions, the appellant stated he had been at a mental hospital (Rusk) when he was about 13 or 14 years old. He said he was examined by a psychiatrist at the Bexar County jail three months earlier. "Just somebody seen me down there, and they said I wanted to try to commit suicide or something. Didn't know what he was talking about." His attorney told the judge appellant had been "depressed or whatever." There was no psychiatric evaluation among the papers of the court. The attorney indicated that appellant was legally and mentally competent to stand trial, although his ability to understand was limited. He could not read.

The trial judge read the indictment (count one) to appellant. Appellant was told he could plead not guilty, nolo contendere or guilty. He pled "nolo."

In accepting the plea the trial court reminded appellant he was not eligible for probation. Appellant answered all questions asked him and indicated he understood. After finding appellant guilty of the offense, the court ordered a psychological and pre-sentence report. This court must assume the court had these reports before it at sentencing. At that point the attorney affirmed to the court he had waived the motion to suppress the confession.

At the punishment phase counsel for appellant presented witnesses: the niece of appellant and his sister. Then he said, "The defendant would like to testify."

Appellant said that after the occurrence with the girl, he "[d]idn't feel good at all. I went and busted my camera, stopped going over my sister's house, didn't go over there very often like I used to." He affirmed that he tried to avoid the child after that.

Pictures appellant took of himself with the child had been given to the police by a

man who said a "burglar" got them and "wanted something done about it." These pictures would have been admissible at trial as well as at the plea hearing. Appellant had given a confession to officers; counsel filed his motion to suppress the confession. At the close of the punishment phase appellant's counsel moved "to introduce the confession that the District Attorney introduced during the trial for the full text of it." The full confession was admitted in evidence as Defendant's Exhibit A. Therefore, the trial court considered it.

I disagree that the record shows ineffective assistance of counsel under the facts of this case. While we might not agree with some strategy employed by this counsel, it was just that—strategy. The test should be applied at the time of trial, not through hindsight. *Hawkins v. State,* 660 S.W.2d 65, 75 (Tex.Crim.App.1983). I believe that appellant has failed to sustain the burden of proving either prong of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In particular, it has not been shown that the deficient performance of counsel (if any) so prejudiced the defense as to result in denial of a fair trial. He must show the result of the trial is not reliable. That burden has not been sustained.

Now to return to the first part of this dissent. While this court has many powers, some statutory and others inherent, it is not appropriate for the court to abate a cause to permit a record to be made for purposes of appeal. The hearing for this record was conducted as for an article 11.-07 writ of habeas corpus. The record that is filed for appeal should contain the proof ascertained at the trial level to perfect the appeal on the point of error of ineffective assistance of counsel, perhaps by motion for new trial. If it does not, the defendant has not obtained the necessary record to perfect that point on direct appeal. I would hold this court should not have abated the "appeal" for a record to be made post-trial on alleged ineffective assistance of counsel.

On both grounds I respectfully dissent. I would affirm the judgment.