Jay Paul JACKSON, Appellant

v.

The STATE of Texas, Appellee

NO. 14–15–00095–CR

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed March 31, 2016

Douglas M. Durham, Houston, TX, for Appellant.

Bridget Holloway, Houston, TX, for State.

Panel consists of Justices Boyce, Jamison, and Busby.

## OPINION

William J. Boyce, Justice

A jury found appellant Jay Paul Jackson guilty of capital murder, and he automatically was sentenced to life imprisonment without parole. Appellant contends the trial court erred by admitting evidence obtained from a warrantless search of a bedroom in an apartment where appellant occasionally stayed; admitting evidence obtained from appellant's cell phone and records obtained from appellant's wireless service provider; and allowing an in-court identification of appellant that appellant contends was more prejudicial than probative. We affirm.

### BACKGROUND

The body of Matthew Rouhani was found inside his printing business on September 3, 2011. Rouhani was slumped in a chair in front of his computer; he had been shot twice in the back of the head. A subsequent investigation indicated Rouhani had been shot on or about September 1. The investigating officers learned that Rouhani's blue Honda Fit was missing and put out an alert on the vehicle.

On September 8, 2011, appellant reported to police that his blue Honda Fit had been stolen by Obed Rodriguez, who was demanding $700 for the return of the vehicle. Officers successfully located Rodriguez and recovered the vehicle. Before returning the vehicle to appellant, officers ran a computer check on the vehicle's license plates and learned that the vehicle was connected to Rouhani's homicide case.

The detectives working Rouhani's homicide were called down to the station, where they spoke with Rodriguez and appellant. Appellant contended he had purchased the vehicle from Rouhani in July and said he had a bill of sale evidencing the purchase. Appellant told the officers the bill of sale was in his bedroom in an apartment where he lived with his mother-in-law, Diana Gomar–Vasquez, and his ex-wife, Dyane Vasquez.

The officers drove appellant to the apartment complex, which was located next to Rouhani's shop. Appellant rode in the front passenger seat and was not restrained. Upon arriving at the complex, one of the officers asked appellant to remain in the vehicle with the second officer while the first officer went inside.

At the apartment, the first officer made contact with Gomar–Vasquez. She told the officer that appellant did not live at the apartment but stayed there occasionally. When asked if the bedroom was appellant's, Gomar–Vasquez said it was not. Gomar–Vasquez said it was her daughter Bianca's room, but Bianca normally stayed in another bedroom. Gomar–Vasquez also referred to the room as a storage room and said she allowed appellant to store some of his items there. The officer asked Gomar–Vasquez for permission to search the bedroom where appellant occasionally stayed, and she granted permission.

While searching for the Honda Fit bill of sale in the bedroom, the officer located a blue duffel bag. Inside the duffel bag were a photocopy of Rouhani's driver's license and a gym membership card bear-

ing Rouhani's name. No bill of sale for the Honda Fit was located.

While waiting in the vehicle, appellant initiated a conversation with the second officer. Appellant told the officer that he had lied about purchasing the vehicle from Rouhani because he "didn't want to be a snitch," and that Rodriguez had shot Rouhani.

Appellant was charged with murdering Rouhani while in the course of committing or attempting to commit robbery. *See* Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp.2015).

At trial, Garrett Crenshaw testified that he, Rodriguez, and appellant decided to steal a television from Rouhani's print shop. Crenshaw testified that he and Rodriguez arrived at Rouhani's shop and waited for a call from appellant, who was inside the building, that the coast was clear. Before they received the call from appellant, they heard a gunshot from inside the building. Appellant then opened the door to let Crenshaw and Rodriguez into the building.

Crenshaw testified that they walked to the back of the building and found Rouhani, who had been shot, sitting in his chair. Crenshaw testified that, at some point when all of them were in the room, appellant again shot Rouhani in the back of the head. Crenshaw testified that he and Rodriguez then took a television from the shop and loaded it into the back of Rodriguez's car. Crenshaw testified that appellant took keys from Rouhani's pocket and drove away in Rouhani's blue Honda Fit. According to Crenshaw, he later saw appellant and Rodriguez arguing over ownership of the blue Honda Fit.

Appellant's adopted brother, Shawn Jackson, testified at trial that appellant visited him in Waco on September 2, 2011. Shawn testified that appellant arrived in a blue Honda Fit that Shawn had not seen before. Shawn further testified that appellant said he had "robbed an old man for that car, held him at gunpoint and demanded the title for the car," but later told Shawn "that he murdered the guy for the car."

The jury convicted appellant of the capital murder of Rouhani, and the trial court assessed punishment at life imprisonment without parole. Appellant timely appealed.

## STANDARDS OF REVIEW

In his first, second, third, and fourth issues, appellant challenges the trial court's denial of appellant's motions to suppress evidence. In his fifth issue, appellant contends the trial court erred by allowing an in-court identification of appellant that appellant contends was more prejudicial than probative.

## I. Motions to Suppress

■ We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App.2010). We view the record in the light most favorable to the trial court's conclusion and reverse only if the trial court's decision is outside the zone of reasonable disagreement. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim.App.2006). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* We give almost total deference to a trial court's express or implied determination of historical facts, and we review *de novo* the trial court's application of the law of search and seizure to those facts. *Valtierra*, 310 S.W.3d at 447.

## II. Admissibility of In–Court Identification

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex.Crim.App.2007). Because trial courts are in the best position to decide questions of admissibility, we must uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Id.*

### ANALYSIS

## I. Warrantless Search of Apartment Bedroom

▇▇▇ Appellant filed a motion to suppress evidence obtained from the search of the bedroom in Gomar–Vasquez's apartment. After a hearing, the trial court concluded that appellant had no reasonable expectation of privacy in the bedroom sufficient to confer standing on appellant to challenge the search.[1] The trial court further concluded that, even if appellant had standing, Gomar–Vasquez nevertheless had authority to consent to the search. In his first and second issues on appeal, appellant contends the trial court erred by denying appellant's motion to suppress because (1) appellant had standing as an occasional overnight guest to challenge the search of the bedroom, and (2) the warrantless search of the guest bedroom violated appellant's Fourth Amendment rights.

Assuming without deciding that appellant had standing to challenge the search of the bedroom in Gomar–Vasquez's apartment where he was an occasional overnight guest, we nevertheless conclude that appellant's Fourth Amendment rights were not violated because Gomar–Vasquez consented to the search.

▇▇▇ Consent to search is one of the well-established exceptions to the constitutional requirements of probable cause and a warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App.2002). A third party can consent to a search to the detriment of another if the third party has actual authority over the place or thing to be searched. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex.Crim.App.2010). Even if the third party lacks actual authority to consent, *i.e.*, the third party does not actually have joint access to or control over the premises, the third party's purported consent nevertheless can validate a search if it reasonably appears to the police that the third party does in fact have authority. *Id.* at 561. The State bears the burden of proving that the person who gave consent had actual or apparent authority to do so. *Id.*; *Corea v. State*, 52 S.W.3d 311, 317 (Tex.App.–Houston [1st Dist.] 2001, pet. ref'd). Whether a third party had authority to consent to a search of another's property and whether an officer was reasonable in finding that a third party had apparent authority to consent are mixed questions of law and fact that we review *de novo*. *Hubert*, 312 S.W.3d at 559–60.

During the hearing on appellant's motion to suppress, Gomar–Vasquez testified

---

1. A defendant has standing under the Fourth Amendment to challenge the admission of evidence obtained by a governmental intrusion only if he had a legitimate expectation of privacy in the place invaded. *See Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134, 99 S.Ct. 421.

that she and her daughters were on the lease for the apartment; that appellant was not on the lease; and that appellant did not pay rent. Gomar–Vasquez further testified that appellant was not living at the apartment at the time of the search but sometimes stayed there on weekends. She testified that appellant slept in the bedroom when he stayed at the apartment but did not have a key to the bedroom; she would not have allowed him to lock the door while he was there. Gomar–Vasquez testified that she consented to the search of the bedroom.

The officer who searched the bedroom testified that Gomar–Vasquez told him at the time of the search that appellant "doesn't live here" and "[h]e just stays here once in a while." Gomar–Vasquez told the officer that the bedroom was not appellant's, and that it was actually one of her daughter's rooms, though her daughter usually stayed in another room. Gomar–Vasquez also told the officer the room was a general guest room used for storage.

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that Gomar–Vasquez had actual authority to consent to a search of the bedroom. Gomar–Vasquez was the lessee of the apartment and had control over the bedroom being searched. No evidence was presented that appellant had exclusive possession of the bedroom. *See Hubert,* 312 S.W.3d at 563 (defendant may overcome presumption of a third party's common authority to authorize search by presenting evidence that defendant had exclusive possession of the searched premises). Because we conclude that Gomar–Vasquez had actual authority to consent to the search, we need not determine whether the officer's conduct was justified by Gomar–Vasquez's apparent authority. *See id.* at 564. Accordingly, the trial court did not err in denying appellant's motion to suppress evidence obtained from the search of the bedroom. *See Fast v. State,* 755 S.W.2d 515, 517 (Tex.App.–Houston [14th Dist.] 1988, pet. ref'd) (warrantless search was valid where officers had consent from individual who told officers it was his apartment and that he was the only person named on the lease); *see also Hubert,* 312 S.W.3d at 563 ("[A]ppellant, lacking any proprietary interest in the house, or even any possessory right other than by the grace of his grandfather, assumed the risk that his grandfather might permit the search of any area of the house that he might reasonably suspect the appellant was using for criminal purposes, even including the appellant's bedroom.").

As a final matter, we address appellant's argument that Gomar–Vasquez's consent was invalid as a result of appellant's alleged refusal of consent. During his initial conversation with the officers at the police station, appellant told the officers: "You can come back to my house. . . . You can sit on the couch, and I will go in my room and get those documents for you." Appellant contends that this statement constituted an objection to the officers conducting a search; appellant does not contend that he objected to the search at any other time. Citing *Georgia v. Randolph,* 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), appellant contends that Gomar–Vasquez's consent to search was not valid in light of appellant's stated objection to the search.

Initially, we conclude that appellant's statement was not an objection to the search. Appellant's statement to the officers that they could come with him and sit on the couch while he retrieved the documents from the bedroom is not the same as a refusal to allow a search. However, even if the statement could be construed as a refusal, it was ineffective.

In *Randolph,* the United States Supreme Court recognized a narrow excep-

tion to the general rule that consent from one resident of a jointly occupied premises is generally sufficient to justify a warrantless search. 547 U.S. at 120, 126 S.Ct. 1515; *see also Fernandez v. California*, —— U.S. ——, 134 S.Ct. 1126, 1133, 188 L.Ed.2d 25 (2014). The Supreme Court held that consent given by one occupant is invalid when another physically present occupant has expressly refused consent. *Randolph*, 547 U.S. at 120, 126 S.Ct. 1515. In doing so, the Court crafted a bright-line rule: "[I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Id.* at 121, 126 S.Ct. 1515.

In *Fernandez v. California*, the Supreme Court considered whether *Randolph* applies if a party actually objects but is absent when another occupant later consents. 134 S.Ct. at 1129–30. The Court refused to extend the *Randolph* exception to a situation in which consent was provided by a co-occupant after the objecting party was removed from the apartment they shared. *Id.* at 1130. The Court rejected the appellant's argument that his objection—made while he was present at the premises—should remain in effect until he withdrew the objection or for a "reasonable time." *Id.* at 1135–36.

Here, appellant was not physically present as contemplated by the Supreme Court in *Randolph*. Appellant never objected to the search at the apartment door. Nor did appellant object when he was sitting in the police car outside the apartment, though such an objection would have been ineffective. *See Randolph*, 547 U.S. at 121, 126 S.Ct. 1515 (noting that where, as in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), defen-

dant was not present with the opportunity to object but was instead in a squad car nearby, the defendant was not physically present and objecting such that the third party's consent was invalid). Appellant's statement at the police station before heading to the apartment complex was the only alleged objection. Even construing the statement liberally as an objection, it did not prevent Gomar–Vasquez from later consenting to the search. *See Fernandez*, 134 S.Ct. at 1135–36. Accordingly, we reject appellant's argument that Gomar–Vasquez's consent to the search was invalid in light of his alleged previous refusal.

Appellant's first and second issues are overruled.

## II. Cell Phone Seizure and Cell Tower Records

In his third and fourth issues, appellant challenges the trial court's denial of a second motion to suppress evidence obtained from his cell phone and cell tower records obtained from his cell phone service provider. Specifically, in his third issue appellant contends the warrantless seizure of his cell phone violated the Fourth Amendment. In his fourth issue, appellant contends that the prior version of Texas Code of Criminal Procedure article 18.21, which allowed police to obtain cell tower records relating to appellant's cell phone without a showing of probable cause, was unconstitutional under Article 1, Section 9 of the Texas Constitution.

When appellant initially reported that Rodriguez had stolen appellant's blue Honda Fit, appellant told officers that Rodriguez was threatening appellant and demanding $700 for the return of the vehicle. Appellant contended that text messages from Rodriguez on appellant's phone evidenced the threats and extortion demands. In the initial interview, the investigating officers asked for permission to look at

appellant's phone to view the text messages. Appellant gave them permission and the officers took possession of appellant's phone. Appellant never revoked his consent, and the officers retained possession of the phone.

During a second interview that took place immediately after the apartment search, officers asked appellant if he had Shawn Jackson's telephone number. Appellant responded, "Well, you have my phone. You can look at it." The phone was seized permanently when appellant was arrested.

After appellant's arrest, the officers secured a search warrant to obtain data from appellant's cell phone. The officers also secured a court order pursuant to the version of Texas Code of Criminal Procedure article 18.21 effective at the time, allowing them to obtain cell tower data concerning appellant's cell phone.

## A. Seizure of Cell Phone

 Appellant contends that police illegally seized his cell phone without a search warrant when appellant was not in custody. The State does not dispute that police initially obtained possession of appellant's cell phone without a warrant. However, police asked for permission to look at appellant's phone, and appellant voluntarily handed over the phone. Voluntary consent is a well-established exception to the requirement that police obtain a warrant. *See Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); *State v. Weaver,* 349 S.W.3d 521, 525–26 (Tex.Crim.App.2011); *Harris v. State,* 994 S.W.2d 927, 930 (Tex.App.–Waco 1999, pet. ref'd) ("Constitutional proscriptions against warrantless searches and seizures do not come into play when a person

gives free and voluntary consent to a search.").

Moreover, to the extent appellant's argument can be construed as a challenge to any pre-warrant search of the phone, we likewise reject it for the same reason. The United States Supreme Court has concluded that "a warrant is generally required before [searching a cell phone's records], even when a cell phone is seized incident to arrest." *Riley v. California,* —— U.S. ——, 134 S.Ct. 2473, 2493, 189 L.Ed.2d 430 (2014). Here, however, appellant consented to the search of his cell phone at least twice and never revoked that consent. Accordingly, appellant's third issue is overruled.

## B. Constitutionality of Former Article 18.21 § 5(a)

 Appellant contends that "[p]rejudicial and harmful digital information recovered from the cell phone was admitted into evidence including but not limited to [appellant's] cell phone number, cell phone provider's identity, phone records and cell tower information that enabled an expert to testify to Appellant's location close to the crime scene at various times before and after the offense."

The evidence of which appellant complains was obtained by police using a court order issued under a prior version of Texas Code of Criminal Procedure article 18.21 § 5(a). *See* Act of May 29, 1989, 71st Leg., R.S., ch. 958, § 1, 1989 Tex. Gen. Laws 4026, 4030 (amended 2013) (current version at Tex.Code Crim. Proc. Ann. art. 18.21 § 5(a)). Under the prior version, a showing of probable cause was not required to obtain a court order requiring a cell phone service provider to disclose electronic customer data.[2] *See id.*

---

**2.** The State contends that the application for the court order in this case demonstrated probable cause. We need not determine

whether the application demonstrated probable cause because, as discussed *infra,* the Texas Court of Criminal Appeals has determined

Instead, the statute required only a "reasonable belief that the information sought is relevant to a legitimate law enforcement inquiry." *Id.*

Appellant challenges the constitutionality of the prior version of Article 18.21 § 5(a) on grounds that allowing police to obtain electronic customer data from a cell phone service provider without making a showing of probable cause violates Article I, Section 9 of the Texas Constitution.[3]

Appellant relies on *Richardson v. State,* 865 S.W.2d 944 (Tex.Crim.App.1993), in support of his argument. The Texas Court of Criminal Appeals has succinctly summarized its holding in *Richardson* :

> In *Richardson* we were called upon to decide whether use of a pen register could ever constitute a "search" under Article I, § 9. The Supreme Court had authoritatively held that a pen register is not a search for Fourth Amendment purposes, in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). We were persuaded by the weight and persuasiveness of critical and judicial authority that the Supreme Court was wrong to conclude in *Smith* that there was no objectively reasonable expectation of privacy in the numbers one dials on the telephone. We therefore exercised our prerogative to construe Article I, § 9 differently than the Supreme Court had construed the Fourth Amendment.

*Crittenden v. State,* 899 S.W.2d 668, 673 n. 8 (Tex.Crim.App.1995). Concluding that

"the use of a pen register may well constitute a 'search' under Article I, § 9 of the Texas Constitution," the Court in *Richardson* then determined that the remaining question was "whether such a search would be 'unreasonable' in the absence of probable cause." *Richardson,* 865 S.W.2d at 953–54. The Court concluded that if the search were "unreasonable," then Article 18.21 would violate the Texas Constitution "to the extent it authorizes a court ordered pen register without a showing of probable cause." *Id.* at 954. However, the Court in *Richardson* did not determine that the statute was *per se* unconstitutional; instead, it remanded to the court of appeals to determine whether the search at issue was "reasonable." *Id.*

*Richardson* involved a different section of Article 18.21 than the one at issue in this case. More guidance is provided by a recent case from the Court of Criminal Appeals analyzing Article 18.21 § 5(a), the same section at issue here.

In *Ford v. State,* 477 S.W.3d 321, 322 (Tex.Crim.App.2015), the Court of Criminal Appeals considered whether the State's warrantless acquisition of four days' worth of historical cell tower location information violated the Fourth Amendment. The Court concluded that "[t]he State did not violate Ford's Fourth Amendment rights when it obtained ... information by way of a court order under Article 18.21 § 5(a) of the Texas Code of Criminal Procedure–an order available on a showing short of probable cause." *Id.* The Court further concluded that "Appellant had no legitimate

---

that an order pursuant to the prior version was constitutional when used in a limited-duration context, as was the case here. *See Ford v. State,* 477 S.W.3d 321, 322 (Tex.Crim. App.2015).

3. Article 1, Section 9 of the Texas Constitution—the Texas equivalent of the Fourth Amendment—provides: "The people shall be secure in their persons, houses, papers and

possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation." Tex. Const. art. I, § 9; *Rodriguez v. State,* 232 S.W.3d 55, 60 (Tex. Crim.App.2007).

expectation of privacy in records held by a third-party cell-phone company identifying which cell-phone towers communicated with his cell phone at particular points in the past." *Id.* at 330.

This court recently considered a constitutional challenge identical to appellant's challenge here under Article I, Section 9 of the Texas Constitution. *See Hankston v. State,* No. 14–13–00923–CR, 2015 WL 3751551, at *6 (Tex.App.–Houston [14th Dist.] June 16, 2015, pet. granted) (mem. op., not designated for publication). In *Hankston,* the appellant contended that the State's acquisition of his cell phone records without a warrant violated his rights under Article I, Section 9 of the Texas Constitution. *Id.* Like appellant here, the appellant in *Hankston* relied on *Richardson* in support of his argument. *Id.*

Without the benefit of the Court of Criminal Appeals's subsequent decision in *Ford,* we concluded:

> Aside from citing to *Richardson,* appellant does not provide any reasoning as to why the Texas Constitution affords greater protection in this instance. Appellant cites to no authority for this proposition and does not point to any difference in the two provisions to warrant such a result. Thus, we utilize Fourth Amendment precedent to conclude that the State's acquisition of appellant's cell phone records does not violate Article I, section 9 of the Texas Constitution.

*Id.* Absent a decision from the Court of Criminal Appeals or this court sitting *en banc* that is on point and contrary to the prior panel decision, we are bound by our prior panel decision. *See Medina v. State,* 411 S.W.3d 15, 20 n. 5 (Tex.App.–Houston [14th Dist.] 2013, no pet.).

The issue before the Court of Criminal Appeals in its subsequent *Ford* decision was limited to whether cell-site-location information obtained without a showing of probable cause violated the Fourth Amendment; *Ford* did not address a challenge under Article I, Section 9 of the Texas Constitution. Nevertheless, we believe *Ford* bolsters *Hankston's* holding as it relates to an alleged violation of Article I, Section 9 of the Texas Constitution.

The Texas Court of Criminal Appeals has stated that it "will not be bound by Supreme Court decisions addressing the comparable Fourth Amendment issue" when analyzing and interpreting Article I, Section 9 of the Texas Constitution. *See Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991). But the court also has stated that it "will not read Article I, § 9 differently than the Fourth Amendment in a particular context simply because [it] *can." Crittenden,* 899 S.W.2d at 673 n. 8 (emphasis in original). The court further stated in *Crittenden,* "We cannot hold that what this Court believed was reasonable under the Fourth Amendment is somehow not reasonable under Article I, § 9." *Id.* at 673 n. 9.

We conclude that *Richardson* is not applicable here. In *Richardson,* the Texas Court of Criminal Appeals disagreed with the United States Supreme Court's conclusion in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), that the installation and use of a pen register was not a search. *Richardson,* 865 S.W.2d at 949–51. The Court of Criminal Appeals interpreted Article I, Section 9 as providing greater protections than the Fourth Amendment in that specific context. *See Crittenden,* 899 S.W.2d at 673 n. 8; *Richardson,* 865 S.W.2d at 953–54. In contrast, the Court of Criminal Appeals already has decided that the prior version of Article 18.21 § 5(a) at issue here did not violate the Fourth Amendment. *See Ford,* 477 S.W.3d at 322, 330, 334–35. We "can-

not hold that what [the Court of Criminal Appeals] believed was reasonable under the Fourth Amendment is somehow not reasonable under Article I, § 9," and we conclude that the prior version of Article 18.21 § 5(a) did not violate Article I, Section 9 of the Texas Constitution. *See Ford*, 477 S.W.3d at 322, 330, 334–35; *Crittenden*, 899 S.W.2d at 673 n. 8, 673 n. 9. We see no justification for departing from this court's prior holding in *Hankston*.

Appellant's fourth issue is overruled.

### III. In–Court Identification

In his fifth issue, appellant argues that the trial court erred by allowing Rouhani's employee to identify appellant as a person resembling a man she saw arguing with Rouhani several days before Rouhani's death. Appellant contends the identification should have been excluded under Texas Rule of Evidence 403 because it was more prejudicial than probative.

Rouhani's employee testified that she saw Rouhani and another man arguing when she arrived at work on August 30, 2011. She described the unidentified man as "young, thin, dark hair … but kind of blondish." The State asked the employee if she saw anyone in the courtroom "who resembles the guy that [the employee] saw back in Matthew Rouhani's printing shop that day?" Appellant objected that the prejudicial value of the in-court identification outweighed any probative value because the employee testified she had not gotten a good look at the individual's face, and that any in-court identification of appellant would be "based on the fact that he is the only young white kid sitting at coun-

sel table, defense table." The trial court overruled the objection and found that the identification would be more probative than prejudicial. The employee then identified appellant as resembling the individual in Rouhani's shop.[4]

Appellant contends that the employee's in-court identification of appellant as resembling an individual the employee had previously seen at Rouhani's shop acting in an aggressive manner was more prejudicial than probative. Appellant contends this is the case because the employee did not identify appellant as the individual at issue, but rather as someone who "resembled him."

"In the absence of impermissibly suggestive pretrial procedures, in-court identification testimony is always admissible." *Cooks v. State*, 844 S.W.2d 697, 732 (Tex.Crim.App.1992) (also stating that "[a]ppellant's objections to the reliability of the in-court identification go to its weight and not its admissibility"); *see also Moore v. State*, 700 S.W.2d 193, 196 (Tex.Crim. App.1985) ("[T]he fact that a witness cannot be positive in his identification of another person goes to the weight of his testimony and not to its admissibility; therefore, the lack of a positive identification is a jury issue.").

However, otherwise admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403, 60 Tex. B.J. 1129, 1134 (1998, superseded 2015).[5] When reviewing

---

4. The employee went on to testify that after the individual left the shop, Rouhani was pale and nervous. Rouhani told her that he always saw the individual behind his shop and that the individual lived with a "Latin girl."

Rouhani told the employee he was worried that the individual wanted to steal from him.

5. The Texas Court of Criminal Appeals adopted revisions to the Texas Rules of Evi-

evidence to determine if its probative value is substantially outweighed by its prejudicial effect, an appellate court should consider the following: (1) was the probative value of the evidence, either alone or in combination with other evidence, compelling; (2) did the evidence have the potential to impress the jury in some irrational, but nevertheless indelible way; (3) what amount of time did the proponent of the evidence need to develop that evidence and did it distract the jury from considering the indicted offense; and (4) did the proponent of the evidence have other probative evidence available that would help to establish the same fact and did that fact relate to a disputed issue. *See State v. Mechler,* 153 S.W.3d 435, 440 (Tex.Crim. App.2005); *Goldberg v. State,* 95 S.W.3d 345, 375 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd). When the trial court conducts a Rule 403 balancing test, there is a presumption that evidence is more probative than prejudicial. *Feldman v. State,* 71 S.W.3d 738, 754–55 (Tex.Crim. App.2002).

First, the probative value of the in-court identification, when viewed in conjunction with other evidence, was compelling. The evidence demonstrated that someone resembling appellant had an argument with Rouhani several days before Rouhani's death and that Rouhani thought that individual might steal from him. This evidence, when viewed in connection with other evidence, supported the State's theory that it was appellant who planned the crime, examined the scene, and ultimately let Crenshaw and Rodríguez into Rouhani's shop after having shot Rouhani.

Second, the employee's tentative identification of appellant did not confuse or mislead the jury. The employee initially stated that appellant resembled the man she saw arguing with Rouhani. However, when asked again on cross-examination whether her testimony was that appellant looked like the man who she saw in Rouhani's shop, the employee responded: "It is him." Moreover, the identification did not have the potential to impress the jury in some irrational but indelible way because the identification was directly relevant to the crime—it placed appellant in Rouhani's shop prior to the crime, where appellant would have seen the television that was apparently the motivation for the robbery. *See Mechler,* 153 S.W.3d at 440 (noting in analysis of the irrational impression prong that unfair prejudice "refers only to relevant evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged.").

Third, while the time needed to develop the employee's testimony was not insubstantial, the employee was only one of 25 witnesses who testified during a week-long trial. Moreover, the amount of time needed to develop the employee's testimony was primarily due to the fact that it was frequently interrupted by lengthy discussions regarding appellant's objections to the testimony. Accordingly, we cannot conclude that the amount of time needed to develop the evidence at issue weighed against its admission.

█ Finally, we review the State's need for the evidence. This last factor considers whether the State had other evidence establishing the relevant fact and whether the relevant fact was related to a disputed issue. *See id.* at 441. In this instance, the State had other evidence suggesting that appellant was at the crime scene and committed the crime; however,

dence, except as to Rules 511 and 613, effective April 1, 2015. *See* Final Approval of Amendments to the Texas Rules of Evidence, Misc. Docket No. 15001 (Tex.Crim.App. Mar. 12, 2015). We cite to the previous version of the Rules because appellant's trial occurred in January 2015, before the effective date of the amendments.

the challenged identification was the only evidence suggesting that appellant was in Rouhani's shop before the crime and had knowledge of the shop and its contents. Moreover, it was the only evidence presented that appellant had argued with Rouhani prior to the crime, possibly providing some explanation for Rouhani's murder—either that appellant was angry with Rouhani, or that appellant killed Rouhani because Rouhani knew him and would be able to identify him. Accordingly, the evidence that the person in the shop prior to Rouhani's death resembled appellant was certainly of importance to the State's case.

Having evaluated all of the factors, we conclude that the sum of the factors weigh in favor of admissibility of the in-court identification. Accordingly, we conclude that the trial court did not abuse its discretion in allowing the employee's tentative identification of appellant.

Appellant's fifth issue is overruled.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.