

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00083-CR

Mario Angel **GONZALEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2017CRB001360-D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by: Sandee Bryan Marion, Chief Justice

Sitting: Sandee Bryan Marion, Chief Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: September 23, 2020

AFFIRMED

A jury found appellant Mario Angel Gonzalez ("Gonzalez") guilty of murder and assessed

punishment at confinement for life. We affirm the trial court's judgment.

## Background

On the evening of July 26, 2017, sixteen-year-old Lesley Sanchez drove her mother's Kia

Rondo to the Haynes Recreation Center in Laredo to go for a jog. Lesley arrived at the recreation

center at 9:00 p.m., parked her Kia in the parking lot, and began her jog on the jogging trail. While

jogging, Lesley was assaulted and murdered. The next day, Lesley's uncle and brother discovered

her body in the brush near the jogging trail using the GPS signal from her cell phone. Later that day, police found Lesley's Kia parked in a residential area about half a mile away from her body. A neighbor told police the Kia had been parked in the neighborhood since the night before.

Laredo police were dispatched to the scene where Lesley's body was discovered. Officers found Lesley's body lying face-down in the brush, approximately twenty to thirty yards away from the trail. Given that it was July and very hot, Lesley's body was covered in ants and already decomposing. Officers observed blood droplets and a bloody shoe print on the jogging trail, as well as a large amount of blood in the brush approximately ten feet away from Lesley's body.

Laredo Police Detective Margarita Govea led the investigation of Lesley's death. Detective Govea first reviewed the recreation center's surveillance camera footage. The cameras captured a heavyset male wearing a dark-colored sleeveless shirt with white lettering or a white logo on the chest, baggy black pants, and white tennis shoes pacing back and forth on the jogging trail at around 8:34 p.m. Police subsequently confirmed the man was Gonzalez. The cameras show Lesley arriving at the recreation center approximately thirty minutes later and eventually beginning her jog on the jogging trail. Around the time Lesley finished her first lap of the trail, Gonzalez appears near her on the surveillance footage. The cameras show Gonzalez changing his pace and repeatedly turning around to look backwards at the trail. Lesley began her second lap of the trail and was last visible to the security cameras at 9:36 p.m. At 10:08 p.m., the cameras recorded Gonzalez getting into the driver's seat of Lesley's Kia and driving it out of the parking lot.

Using surveillance camera footage from nearby businesses, police tracked the Kia's route to a gas station. The gas station's surveillance footage shows Gonzalez parking at a pump and exiting the vehicle. Gonzalez appeared to dust himself off and inspect his arms before getting back inside the Kia and driving away. Using two images captured by the gas station's and the recreation center's cameras, police prepared a "Be on the Lookout," or BOLO, bulletin and posted it on the

Laredo Police Department's Facebook page at approximately 1:00 p.m. on July 29. Within two hours, three callers contacted police to notify them the man in the BOLO bulletin resembled Gonzalez, including Gonzalez's father, an anonymous friend of Gonzalez's stepbrothers, and Gonzalez's childhood teacher.

Later that day, Detective Govea and another detective visited Gonzalez's parents' house. The house, which backs up to a park trail that connects to the recreation center's trail, is about half a mile away from where Lesley's body was discovered. Gonzalez's stepmother gave police written and verbal consent to enter the home and search it. While searching the home, police observed a duffel bag and several shopping bags in the living room. Gonzalez's stepmother told police the bags belonged to Gonzalez, who was visiting from San Antonio but was not present at the time. Inside the bags, police discovered a sleeveless, dark green shirt with a light-colored antler design and white lettering on the chest, as well as white Nike tennis shoes with a triangle pattern on the soles matching the pattern of the bloody shoe print left on the jogging trail near Lesley's body. Police also reviewed footage from the family's home security camera, which showed Gonzalez leaving the house on foot on July 26 at 8:23 p.m. and returning home at 10:29 p.m. Dark spots on Gonzalez's clothing visible in the security camera footage appeared to Detective Govea to be blood stains. Gonzalez's stepmother testified that when Gonzalez returned home that night, he asked her what she was making for dinner and if he could wash his clothes and tennis shoes. Gonzalez's stepbrother helped him do his laundry that evening.

Police arrested Gonzalez four days after Lesley's murder. At the time of his arrest, police photographed Gonzalez's entire body. The photographs show abrasions and scratches on Gonzalez's hands and arms, bruises on his chest, and scabs on his knees. The largest cuts on Gonzalez's body were on his left palm. Police asked Gonzalez to sign his name, and he did so left-handed.

Webb County Chief Medical Examiner Dr. Corinne Stern performed Lesley's autopsy. Because Lesley's body had started to decompose and was covered in post-mortem ant bites, it was difficult to take precise measurements of her wounds. Most of Lesley's injuries were to her head and neck. Lesley had five stab wounds and five incised wounds, including a four and one-quarter-inch gaping incised wound in the neck. Lesley's neck wound was so deep her trachea was incised as well. Lesley also had at least five lacerations, one puncture wound, and several contusions. A silver metal screw was removed from one of Lesley's head wounds. Detective Govea, who was present during the autopsy, testified the screw looked similar to those located around the handles of folding knives. Dr. Stern testified "significant force" was required to cause Lesley's injuries, which could not have been accidentally or self-inflicted. Dr. Stern determined Lesley's manner of death was homicide, and the incised wounds to her neck were the fatal wounds.

The Texas Department of Public Safety's Laredo crime laboratory tested Gonzalez's sleeveless shirt and tennis shoes, as well as the t-shirt Lesley was wearing when she died, scrapings taken from under Lesley's fingernails, a DNA sample taken from Lesley's left ankle, and the driver's side seat cover from Lesley's Kia. The crime laboratory's DNA analyst testified Lesley's t-shirt and Gonzalez's left shoe both tested positive for Lesley's DNA but not Gonzalez's DNA. Gonzalez's sleeveless shirt and the driver's side seat cover from Lesley's Kia tested positive for both Lesley's and Gonzalez's DNA. Gonzalez's DNA was not found under Lesley's fingernails or on her left ankle.

At the conclusion of trial, the jury found Gonzalez guilty of murder. Gonzalez appeals.

### Sufficiency of the Evidence

In his first issue, Gonzalez argues the evidence is legally insufficient to support the guilty verdict.

**A.      Standard of review**

When considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Mayberry v. State*, 351 S.W.3d 507, 509 (Tex. App.—San Antonio 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Whether the evidence is legally sufficient is a question of law, and we will not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). We apply this standard of review to a hypothetically correct jury charge. *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), cert. denied, 565 U.S. 1262 (2012). The offense charged in this case was murder: "A person commits an offense if he . . . intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1).

Circumstantial evidence alone may be sufficient to establish guilt. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013); *Hines v. State*, 383 S.W.3d 615, 623 (Tex. App.—San Antonio 2012, pet. ref'd). "In circumstantial evidence cases, it is not necessary that every fact and circumstance 'point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.'" *Temple*, 390 S.W.3d at 359 (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). The jury may draw reasonable inferences from the evidence in the record but may not draw conclusions based on speculation. *Id.* at 360. When the record supports conflicting inferences, we presume the jury resolved any conflicts in favor of the verdict and defer to that resolution. *Id.* (citing *Jackson*, 443 U.S. at 326).

**A.     Analysis**

Gonzalez argues that while it is undisputed he was present at the recreation center before Lesley's murder and later drove her Kia, his "participation in the murder amounts to speculation."

Although a defendant's mere presence at a crime scene is insufficient to support a guilty verdict, it may be circumstantial evidence of guilt when coupled with other incriminating evidence. *See Wright v. State*, 603 S.W.2d 838, 840–41 (Tex. Crim. App. 1979) (en banc). Here, a substantial amount of incriminating evidence reasonably supports the jury's conclusion that Gonzalez was not only present at the crime scene, but caused Lesley's death. Gonzalez fled the scene of Lesley's murder in her Kia. Security camera footage captured Gonzalez after the murder with dark spots on his clothing, which Detective Govea testified appeared to be blood stains. Gonzalez then immediately washed his clothes and shoes after arriving home later that evening. *See Temple v. State*, 342 S.W.3d 572, 590 (Tex. App.—Houston [14th Dist.] 2010) (concealing incriminating evidence is circumstantial evidence of guilt), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). Even after Gonzalez laundered his clothing, subsequent DNA analysis revealed a mixture of Lesley's and Gonzalez's DNA on Gonzalez's sleeveless shirt, as well as Lesley's DNA on one of Gonzalez's shoes. Finally, the medical examiner testified Lesley's injuries suggest she struggled with her attacker, and police photographed Gonzalez four days later with bruises on his chest, scabs on his knees, and abrasions and scratches on his hands and arms.

Therefore, in light of the combined and cumulative force of all of the incriminating circumstances, we conclude the evidence is legally sufficient to support the guilty verdict. Gonzalez's first issue is overruled.

## Ineffective Assistance of Counsel

In his second issue, Gonzalez argues he received ineffective assistance of counsel at trial.

**A.    Standard of review**

To prevail on a claim of ineffective assistance of counsel, Gonzalez must establish by a preponderance of the evidence that: (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) Gonzalez was prejudiced by trial counsel's defective performance. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To determine whether trial counsel's performance was deficient, we look to the totality of the representation and the particular circumstances of the case. *Id.* at 813.

Our review of trial counsel's performance is "highly deferential," and we indulge a "strong presumption" that trial counsel's conduct fell within a wide range of reasonable representation. *Id*. "To defeat the presumption of reasonable professional assistance, 'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Id*. at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119 (1997)). Consequently, a direct appeal usually is an inadequate vehicle for raising a claim of ineffective assistance of counsel because the record is generally undeveloped as to why trial counsel did what he did. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson*, 9 S.W.3d at 814 n.6 ("[I]n the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*."). Where, as here, the record is silent as to trial counsel's strategy, we will not conclude Gonzalez received ineffective assistance of counsel unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)).

**B.** **Analysis**

Gonzalez argues he received ineffective assistance of counsel at trial because trial counsel: (1) failed to move to suppress certain evidence, (2) failed to object to certain portions of Detective Govea's testimony, and (3) failed to retain or seek funds to retain expert witnesses. We address each argument separately.

**1. Motion to suppress evidence**

Gonzalez first argues trial counsel was ineffective for failing to move to suppress the evidence seized from Gonzalez's parents' home. In order to show trial counsel was ineffective for failing to file a motion to suppress evidence, Gonzalez must prove a motion to suppress evidence would have been granted. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998).

Police searched Gonzalez's parents' home with Gonzalez's stepmother's written and verbal consent. Consent to search is a well-settled exception to the general rule that warrantless searches are constitutionally unreasonable. *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). A party who has actual authority over the place to be searched can consent to a search of a visitor's property in that place. *See id.* at 560, 564 ("[A]ppellant, lacking any proprietary interest in the house, or even any possessory right other than by the grace of his grandfather, assumed the risk that his grandfather might permit the search of any area of the house that he might reasonably suspect the appellant was using for criminal purposes, even including the appellant's bedroom."); *Jackson v. State*, 491 S.W.3d 411, 416–17 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding defendant's mother-in-law had actual authority to consent to warrantless search of apartment bedroom where defendant stayed as occasional overnight guest). Further, consent to search an area generally includes consent to search containers within that area. *Sanchez v. State*, No. 01-02-01068-CR, 2003 WL 22511493, at *3 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (mem. op.) (citing *United States v. Ross*, 456 U.S. 798, 820–21 (1982)).

Because Gonzalez's stepmother had actual authority to consent to the search of her home, including the pile of Gonzalez's belongings in her living room, Gonzalez would not have prevailed on a motion to suppress the evidence obtained as a result of that search. Gonzalez, therefore, has not demonstrated his counsel was ineffective for failing to file such a motion. *See Jackson*, 973 S.W.2d at 957.

### 2. Objections to Detective Govea's testimony

Gonzalez next argues trial counsel was ineffective for failing to object to Detective Govea's testimony regarding "how the crime was committed, including interpreting blood stains or spatter[.]" Specifically, Gonzalez cites Detective Govea's testimony explaining how the droplets of Lesley's blood on the jogging trail suggest she was first attacked on the trail, then carried to the location in the brush where a large pool of blood suggests her throat was cut, and then dragged by her ankles to the place where her body was discovered. Gonzalez also cites Detective Govea's testimony that a screw found in one of Lesley's wounds resembles a screw from a folding knife, as well as her statement, in response to trial counsel's inquiry, that she believes Gonzalez's injuries "were from the killing." Gonzalez argues this was expert opinion testimony offered by a lay witness not qualified as an expert.

"Both lay and expert witnesses can offer opinion testimony." *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). A lay witness can offer opinion testimony if her opinions or inferences are rationally based on her perceptions and helpful to the clear understanding of testimony or the determination of a fact in issue. *Id.* (citing TEX. R. EVID. 701). Even a witness with specialized knowledge or experience may offer lay opinion testimony if she testifies regarding events she personally perceived. *Id.* at 536. "Thus, although police officers have training and experience, they are not precluded from offering lay testimony regarding events which they have personally observed." *Id.* "[A]s a general rule, observations which do not require significant

expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met." *Id.*

Detective Govea is a twelve-year veteran of the Laredo Police Department with training and experience in homicide investigations. Based on her personal observation of the location and amount of blood at the crime scene, as well as her training and experience, Detective Govea testified regarding where she believes Lesley sustained her injuries and how Lesley's body was moved from the jogging trail to the brush. Detective Govea did not offer any opinions based on a scientific theory, such as testimony regarding the direction of blood spatter or the size and shape of blood droplets. Rather, her testimony was limited solely to what she observed at the scene.

Detective Govea also personally observed Lesley's autopsy and the metal screw removed from Lesley's head. Detective Govea testified she recognized the screw from her "personal experience owning and handling . . . folding pocket knives." Finally, Detective Govea opined, without elaboration, that she believes Gonzalez sustained his injuries during "the killing," but she did not base her opinion on any scientific theory. Therefore, Detective Govea's testimony was admissible lay witness testimony under Rule 701. *See id.* at 535.

Failure to object to admissible evidence is not ineffective assistance of counsel. *Atkinson v. State*, 564 S.W.3d 907, 913 (Tex. App.—Texarkana 2018, no pet.). Based on the silent record before us, we cannot conclude no competent attorney would have elected not to object to Detective Govea's testimony. *See Goodspeed*, 187 S.W.3d at 392.

### 3. Lack of expert witnesses

Finally, Gonzalez argues trial counsel was ineffective for failing to hire a DNA expert to assist trial counsel in rebutting the State's DNA evidence, as well as a mental health expert to develop a case for mitigating punishment.

Failure to call additional witnesses generally does not constitute ineffective assistance of counsel without a showing that the witnesses were available to testify and their testimony would have benefitted the defendant. *Brown v. State*, 334 S.W.3d 789, 803 (Tex. App.—Tyler 2010, pet. ref'd) (citing *Butler v. State*, 716 S.W.2d 48, 55 (Tex. Crim. App. 1986)). Failure to request appointment of an expert witness also will not constitute ineffective assistance of counsel absent a showing that the expert's testimony would have benefitted the defendant. *Id.* (citing *Cate v. State*, 124 S.W.3d 922, 928 (Tex. App.—Amarillo 2004, pet. ref'd)). Nothing in the record before this court shows any expert witnesses were willing to testify or that their testimony would have benefitted Gonzalez. Therefore, based on the silent record before us, we cannot conclude trial counsel was ineffective for failing to request appointment of any expert witnesses. *See Goodspeed*, 187 S.W.3d at 392.

Because Gonzalez has not demonstrated trial counsel's conduct fell below an objective standard of reasonableness, we overrule his second issue. *See Thompson*, 9 S.W.3d at 812.

## Conclusion

Having overruled Gonzalez's issues, we affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH